Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/26/2018 10:14 AM CDT

Shelley R. Gimple, appellee and cross-appellant,
v. Student Transportation of America
and National Interstate Ins. Co.,
appellants and cross-appellees.

___ N.W.2d ___

Filed August 3, 2018.    No. S-17-985.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

3. **Workers' Compensation: Subrogation.** Neb. Rev. Stat. § 48-118 (Reissue 2010) grants an employer who has paid workers' compensation benefits to an employee injured as a result of the actions of a third party a subrogation interest against payments made by the third party.

4. **Workers' Compensation: Statutes: Appeal and Error.** In workers' compensation cases, appellate courts give statutory language its plain and ordinary meaning.

5. **Words and Phrases.** The plain and ordinary meaning of "any" is "all" or "every."

6. **Workers' Compensation: Appeal and Error.** Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.

7. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the

Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed in part, and in part reversed and remanded with directions.

Abigail A. Wenninghoff and Jocelyn J. Brasher, of Larson, Kuper & Wenninghoff, P.C., L.L.O., for appellants.

Caroline M. Westerhold and Zachary W. Anderson, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and VAUGHAN, District Judge.

PAPIK, J.

A vehicle driven by a drunk driver struck the school bus Shelly R. Gimple was driving and injured her. For a time, Gimple's employer, Student Transportation of America (Student Transportation), paid workers' compensation benefits to Gimple. When Gimple later asserted that she was permanently disabled as a result of her injuries and Student Transportation refused to pay benefits to which Gimple claimed she was entitled, Gimple brought suit in the Workers' Compensation Court. The compensation court found that Gimple was entitled to additional benefits and that it did not have jurisdiction to grant relief requested by Student Transportation concerning a settlement Gimple entered into with the driver who caused her injuries. The compensation court denied Gimple's request that she be awarded penalties, attorney fees, and interest because of Student Transportation's failure to pay the benefits she requested.

The parties have now appealed and cross-appealed. We affirm the compensation court's findings that Gimple was entitled to benefits and that it did not have jurisdiction to resolve

issues regarding the third-party settlement, but we reverse its determination that Gimple was not entitled to penalties, attorney fees, and interest.

## BACKGROUND

*Gimple's Claim for Benefits.*

On April 22, 2014, a vehicle driven by a drunk driver struck the school bus Gimple was driving for Student Transportation. After being taken by ambulance to a hospital, doctors diagnosed her with a left distal radius intra-articular fracture dislocation. Gimple underwent multiple surgeries and treatments over the next few years as a result of her injury.

While Student Transportation initially paid some workers' compensation benefits to Gimple as she incurred medical costs, a dispute eventually arose between the parties as to whether Gimple was entitled to additional benefits. Gimple claimed that she was permanently disabled as a result of her injuries and was entitled to permanent partial disability benefits (PPD benefits). After Student Transportation refused to pay such benefits, Gimple filed an action in the compensation court against Student Transportation and its workers' compensation insurer.

Student Transportation admitted that Gimple suffered an injury arising out of and in the scope of her employment, but denied the remainder of the allegations. Student Transportation also alleged that Gimple had failed to comply with the Nebraska Workers' Compensation Act by settling a claim against the third party who injured her for $25,000 without providing notice or reimbursement to Student Transportation. Student Transportation requested that the compensation court declare either that the settlement was void or that Student Transportation was entitled to a credit against past and future workers' compensation benefits because of Gimple's receipt of the settlement funds.

The compensation court conducted a trial. Importantly for purposes of this appeal, the parties stipulated that Gimple

suffered an injury arising out of and in the course and scope of her employment, that the past medical treatment Gimple received was reasonable and necessary, and that Gimple suffered a single scheduled member injury to her left upper extremity. In addition, both parties presented evidence. Among the evidence introduced by Gimple was a letter containing an opinion as to Gimple's permanent impairment from Dr. Ian Crabb, an orthopedic doctor who had treated Gimple. In his letter, Dr. Crabb opined on the extent of Gimple's permanent impairment as a result of the injury.

*Initial Award.*

The compensation court issued its initial award on August 23, 2017. In the initial award, the compensation court determined that Gimple was entitled to some temporary total disability benefits, but was not entitled to PPD benefits. The compensation court's stated reason for not awarding PPD benefits was that Gimple failed to offer evidence of permanent impairment. Despite the parties' stipulation that the injury was to her left arm, the compensation court found that the injury was actually to Gimple's left wrist and that Gimple failed to offer evidence of permanent impairment to her wrist.

The compensation court also found it was without jurisdiction to grant the relief Student Transportation sought with respect to the third-party settlement. It relied on *Miller v. M.F.S. York/Stormor*, 257 Neb. 100, 595 N.W.2d 878 (1999), in which this court held that the compensation court did not have jurisdiction to determine the amount of credit to which an employer was entitled on an employee's workers' compensation benefits as a result of the previous settlement of a suit against a third party.

*Modified Award.*

Gimple later filed a motion to modify the initial award. She asserted that the compensation court erred in rejecting the parties' stipulation that her injury was to her left arm, because the

parties had relied upon that stipulation when presenting evidence and defining the issues for the court to decide. She sought modification of the compensation court's award to accept the parties' stipulation and award PPD benefits in accordance with Dr. Crabb's medical opinion that she suffered a 13-percent permanent partial impairment to her left upper extremity. She further sought penalties, attorney fees, and interest for Student Transportation's nonpayment of those benefits.

Following a hearing on the motion to modify, the compensation court sustained Gimple's motion and issued a modified award finding that Gimple was entitled to PPD benefits in the amount of $12,721.70. It found that it had erred in rejecting the parties' stipulation that Gimple injured her left arm. It noted that both parties tried the case based upon the stipulation that Gimple injured her left arm and that there was no good cause to reject that stipulation. In reliance on the report of Dr. Crabb, the compensation court found that Gimple's left arm was permanently and partially disabled. Although the last sentence of Dr. Crabb's report assigned the impairment rating to Gimple's right arm, the compensation court found that to be a scrivener's error. Finally, the compensation court denied Gimple's request for penalties, attorney fees, and interest for Student Transportation's nonpayment of PPD benefits. It found that there was a reasonable controversy in light of "the 'hand vs. arm' PPD [benefits] debate" and the scrivener's error in Dr. Crabb's report.

## ASSIGNMENTS OF ERROR

On appeal, Student Transportation assigns that the compensation court erred (1) in finding that it lacked jurisdiction to determine the issues regarding the third-party settlement and (2) in finding that Gimple was entitled to PPD benefits for an impairment to her left upper extremity.

On cross-appeal, Gimple assigns that the compensation court erred in failing to award penalties, attorney fees, and interest for Student Transportation's nonpayment of PPD benefits.

## STANDARD OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

## ANALYSIS

*Jurisdiction to Resolve Dispute Regarding Third-Party Settlement.*

We begin with Student Transportation's contention that the compensation court incorrectly concluded it lacked jurisdiction to resolve disputes related to Gimple's settlement with the third party who caused her injuries. For reasons we will explain below, we conclude that the compensation court did not have jurisdiction to decide these issues and that, therefore, neither does this court.

Student Transportation argues the compensation court should have found that the settlement was void because Gimple did not comply with statutory requirements governing third-party settlements or, alternatively, that Student Transportation was entitled to a credit with respect to its obligations to Gimple. Student Transportation contends that the compensation court has authority to resolve these issues by virtue of Neb. Rev. Stat. §§ 48-152 and 48-161 (Reissue 2010), two general jurisdictional statutes that authorize the Workers' Compensation Court to administer the Nebraska Workers' Compensation Act and to decide issues "ancillary to the resolution of an employee's right

to workers' compensation benefits." But a different provision of the Nebraska Workers' Compensation Act speaks directly to the issues Student Transportation sought to raise, and so our analysis must start there.

[3] Neb. Rev. Stat. § 48-118 (Reissue 2010) grants an employer who has paid workers' compensation benefits to an employee injured as a result of the actions of a third party a subrogation interest against payments made by the third party. *Kroemer v. Omaha Track Equip.*, 296 Neb. 972, 898 N.W.2d 661 (2017). The next section, Neb. Rev. Stat. § 48-118.01 (Reissue 2010), discusses claims or suits the injured employee or subrogated employer might pursue against third parties. That section requires that the employer and employee, before making such a claim or bringing such a suit, provide notice to the other of the opportunity to join in such claim or action. Section 48-118.01 goes on to provide as follows:

> Each party shall have an equal voice in the claim and the prosecution of such suit, and any dispute arising shall be passed upon by the court before which the case is pending and if no action is pending then by the district court in which such action could be brought.

(Emphasis supplied.)

We have previously found the above-quoted language controlling when a party sought a credit against benefits it owed as a result of the employee's receiving funds in settlement of a claim against a third party. In *Miller v. M.F.S. York/ Stormor*, 257 Neb. 100, 595 N.W.2d 878 (1999), an employee was injured when the safety equipment on machinery he was repairing failed. The corporation alleged to have installed the safety equipment agreed to settle a personal injury suit against it. The federal district court in which the suit was brought subsequently allocated the settlement between the injured employee and the subrogated employer. The federal court did not, however, address the amount of credit to which the employer would be entitled for any disability benefits accruing thereafter.

When the employee in *Miller* later sought additional workers' compensation benefits, the compensation court found it lacked authority to determine the credit to which the employer was entitled. On appeal to this court, we agreed. We determined that the language of what is now § 48-118.01 quoted above precluded the compensation court from determining the amount of any credit, because the compensation court was neither, in the words of § 48-118.01, "the court before which the case [against the third party] is pending" nor "the district court in which such action could be brought."

Faced with our holding in *Miller* that the compensation court does not have jurisdiction to determine the amount of credit to which an employer is entitled when an employee receives settlement funds from a third party, Student Transportation attempts, in various ways, to distinguish the relief it is seeking from the relief sought in *Miller*. It contends that *Miller* held only that the compensation court cannot determine the *amount* of a credit, but that it asked the compensation court only to find an *entitlement* to a credit. It also contends that it asked the compensation court to find the settlement was void and that *Miller* did not determine whether the compensation court could reach that question.

[4,5] We find Student Transportation's attempts to distinguish *Miller* unpersuasive. The specific issue we decided in *Miller* was whether the compensation court could determine the amount of a credit, but, in concluding that it could not, we relied upon statutory language that is not limited to disputes regarding the amount of a credit. Rather, § 48-118.01 provides that "any dispute" between employer and employee concerning a claim or suit against a third party must be brought in the district court in which an action against a third party is pending or the district court in which such action could be brought. We give statutory language its plain and ordinary meaning. See, e.g., *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). The plain and ordinary meaning of "any" is "all" or "every." See, e.g., *In re Interest of Powers*, 242 Neb.

19, 493 N.W.2d 166 (1992). Section 48-118.01 thus applies to *every* possible dispute that might arise between a subrogated employer and an injured employee regarding a claim against a third party, including the issues Student Transportation attempts to raise in this case.

Disputes governed by § 48-118.01 must be decided by the "court before which the case [against the third party] is pending and if no action is pending then by the district court in which such action could be brought." Because there is no action pending against the driver who injured Gimple, Student Transportation's contentions regarding the third-party settlement must be presented to "the district court in which such action could be brought." And since an action against the third party who injured Gimple could not have been brought in the compensation court, the compensation court correctly concluded it did not have authority to grant the relief Student Transportation requested regarding the third-party settlement.

*PPD Benefits.*

We now turn to the parties' remaining assignments of error, which are related and which we will address together. Both parties argue that the compensation court erred in its disposition of Gimple's claim for PPD benefits. Student Transportation contends that the compensation court erred by finding that Gimple was entitled to such benefits, and Gimple claims that the compensation court erred by not finding that she was entitled to penalties, attorney fees, and interest for Student Transportation's failure to pay them. We conclude that the compensation court correctly found that Gimple was entitled to PPD benefits, but erred by denying her penalties, attorney fees, and interest.

Student Transportation correctly points out that before PPD benefits can be awarded, the workers' compensation claimant must prove not only that he or she suffered an injury arising out of and in the scope of his or employment, but also that his or her injury caused permanent impairment. See *Gardner*

*v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Student Transportation does not dispute that Gimple was injured: it acknowledges the parties' stipulation that Gimple suffered an injury to her left upper extremity and disavows any argument that the stipulation should not be given effect. Rather, Student Transportation argues that Gimple introduced no evidence that she was permanently disabled as a result of the injury to which the parties stipulated.

Gimple counters that the letter of Dr. Crabb mentioned above contains a medical opinion that Gimple was permanently impaired. Dr. Crabb's letter states in relevant part:

> [Gimple's] current diagnosis is status post *left* distal radius fracture with open reduction and internal fixation accompanied by carpal instability. This condition is certainly related to her previous work accident dated April 22, 2014. . . . Gimple has reached Maximum Medical Improvement as of November 3, 2015. She has been released to full duty and has no permanent restrictions.
>
> . . . Gimple has suffered a permanent partial impairment rating related to her injury. Based off her limitations in motion, she receives nine percent (9%) of the upper extremity and due to additional unpredicted mechanical symptoms she receives an additional four percent (4%) of the upper extremity. This results in a total of thirteen percent (13%) permanent partial impairment rating of the *right* upper extremity.

(Emphasis supplied.)

Student Transportation cannot and does not dispute that Dr. Crabb's letter expresses an opinion that Gimple suffered permanent impairment. Instead, it claims that Dr. Crabb's letter cannot support an award of PPD benefits, because he refers to Gimple's *right* arm being impaired despite there being no evidence of an injury to her right arm. In other words, Student Transportation seems to argue that Gimple was incorrectly awarded PPD benefits because of a mismatch between the injury and the evidence of impairment—the parties stipulated

to a left arm injury, but Gimple presented evidence of right arm impairment.

Student Transportation's argument might present a problem for Gimple if we were obligated to look at bits and pieces of Dr. Crabb's letter in isolation. It does, after all, refer to an impairment rating to Gimple's right arm. But, as with any medical opinion, we must view that reference in the context of the expert's entire statement. See *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992).

Viewed in context, it is obvious to us that it was Dr. Crabb's intention to assign a 13-percent impairment rating of the *left* arm and that his reference to the right arm was a scrivener's error. Dr. Crabb initially refers to Gimple's injury as an injury to her left arm. When he later discusses his impairment rating, he refers to "her injury," an unmistakable reference to the injury to the left side mentioned earlier. Furthermore, all of the evidence in the record of Gimple's injury depicts an injury on the left side of her body, and Student Transportation stipulated to an injury to the left upper extremity. Given these facts, it would seem that everyone involved understood that Dr. Crabb had merely made a mistake by referencing the right arm. At oral argument, Student Transportation's counsel conceded as much, admitting that she knew at the time that Dr. Crabb's reference to the right arm was nothing more than a mistake.

[6,7] Because we find that Dr. Crabb's letter, when viewed in context, expressed an opinion that Gimple's left arm was permanently impaired as a result of her injury, Student Transportation's challenge to the award of PPD benefits must fail. Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable

to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.* Given the medical evidence supporting Gimple's permanent impairment, we cannot say that the compensation court clearly erred by awarding PPD benefits.

This leaves only the question of whether Gimple should have received penalties, attorney fees, and interest as a result of Student Transportation's failure to pay PPD benefits. Under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2016), an employee is entitled to a 50-percent waiting-time penalty as well as attorney fees and interest if (1) the employer fails to pay compensation within 30 days of the employee's notice of disability and (2) no reasonable controversy existed regarding the employee's claim for benefits. See *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015).

Because Student Transportation did not pay Gimple PPD benefits within 30 days of Gimple's providing notice of her disability, she is entitled to penalties, attorney fees, and interest if there was no reasonable controversy regarding her entitlement to benefits. We have said that a reasonable controversy exists if (1) there is a question of law previously unanswered by the Nebraska Supreme Court, which question must be answered to determine a right or liability for disposition of a claim, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the compensation court about an aspect of an employee's claim and those conclusions would affect allowance or rejection of an employee's claim, in whole or in part. See *id.*

In affirming the compensation court's award of PPD benefits, we have already determined that there was sufficient medical evidence to justify awarding PPD benefits. In order to determine whether there was a reasonable controversy, we must now revisit that same issue, this time to determine whether the evidence was so one-sided that the only reasonable conclusion that could be drawn therefrom was that Gimple was entitled to such benefits.

It is here that we diverge from the compensation court for the first time. It stated that a reasonable controversy existed "in light of the 'hand vs. arm' PPD [benefits] debate and by virtue of Dr. Crabb's report in which he ostensibly assigned permanent impairment to [Gimple's] right arm rather than her left." We do not believe either of the issues mentioned by the compensation court creates a reasonable controversy as to Gimple's entitlement to PPD benefits.

The compensation court's reference to the "hand vs. arm" debate presumably refers to the compensation court's having some question as to whether the injury was actually to Gimple's arm and not her wrist. It was this issue that caused the compensation court to initially reject the parties' stipulation and deny Gimple PPD benefits. This court has said, however, that voluntary stipulations are to be enforced "'unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo.'" *In re Estate of Mithofer*, 243 Neb. 722, 727, 502 N.W.2d 454, 457-58 (1993), quoting *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972). Student Transportation presents no argument that there was good cause for rejecting the parties' stipulation, and we cannot discern any in the record. Because we do not see a basis to reject the stipulation of a left arm injury, we find that the issue did not amount to a reasonable controversy as to whether Gimple was entitled to PPD benefits.

Neither do we believe that Dr. Crabb's scrivener's error created a reasonable controversy. For all the reasons explained above, we find that despite the mistaken reference to Gimple's right arm, it was quite clear from the context that it was Dr. Crabb's intention to assign an impairment rating to Gimple's left arm. As evidenced by the concession of Student Transportation's counsel at oral argument, this was not a case in which a scrivener's error led to confusion as to the substance of the testimony. Everyone involved knew the reference to the right arm was just a mistake. Under those circumstances,

we do not believe the scrivener's error created a reasonable controversy.

Having set to the side the grounds upon which the compensation court found a reasonable controversy existed, we are left with a stipulation that Gimple injured her left arm and an undisputed medical opinion that she was permanently disabled as a result of that injury. In light of these facts, we do not believe there was a reasonable controversy as to whether Gimple was entitled to PPD benefits.

We are aware that whether a reasonable controversy exists under § 48-125 is a question of fact and that we will reverse the factual findings of the Workers' Compensation Court only if we find them to be clearly wrong. See *Armstrong v. State*, 290 Neb. 205, 859 N.W.2d 541 (2015). In this case, however, we find that the compensation court was clearly wrong. We therefore reverse the court's finding that a reasonable controversy existed and remand this matter with directions to award Gimple relief in accordance with § 48-125 and consistent with this opinion.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the compensation court in part, and in part reverse, and remand the matter with directions to award Gimple relief in accordance with § 48-125 and consistent with this opinion.

Affirmed in part, and in part reversed
and remanded with directions.