Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/22/2019 01:05 AM CST

EDWARD ST. JOHN, APPELLEE, JAMES L. ZIMMERMAN,
APPELLANT, AND BRENDA L. BARTELS AND
MONTE L. NEILAN, APPELLEES, v. GERING
PUBLIC SCHOOLS AND NASB WORKERS
COMPENSATION POOL, ITS WORKERS'
COMPENSATION CARRIER, APPELLEES.

___ N.W.2d ___

Filed February 15, 2019.    No. S-17-898.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.
3. **Contracts: Attorney Fees.** While a lawyer with a valid fee agreement is entitled to recover what a fee agreement allows to the extent that amount is reasonable, a lawyer is not entitled to recover more than a fee agreement allows.
4. **Contracts: Intent.** A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent.

Petition for further review from the Court of Appeals, MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges, on appeal thereto from the Workers' Compensation Court: JOHN R.

Hoffert, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

James L. Zimmerman, of Zimmerman Law Firm, P.C., L.L.O., pro se.

Monte L. Neilan, pro se.

Brenda L. Bartels, of Hanes & Bartels, L.L.C., pro se.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

During the course of his workers' compensation action against Gering Public Schools, Edward St. John switched lawyers. St. John eventually settled his claim, but a dispute remained as to how much St. John owed his lawyers. The Workers' Compensation Court held a hearing regarding the attorney fee issue. After the hearing, the compensation court entered an order directing that the lawyers that St. John discharged, Brenda L. Bartels and Monte L. Neilan, receive $82,500 and that the lawyer who represented St. John through the settlement, James L. Zimmerman, receive $82,500. The compensation court evaluated the attorneys' representation of St. John and found that one set of attorneys did not contribute more to the end result than the other. The compensation court did not analyze the attorneys' entitlement to fees under their written fee agreements with St. John. Zimmerman appealed, and the Nebraska Court of Appeals affirmed.

We granted Zimmerman's petition for further review. We find that because Bartels and Neilan were entitled to less than the amount awarded by the Workers' Compensation Court under the terms of their fee agreement with St. John, the order splitting the fee evenly was erroneous. Accordingly, we reverse, and remand with directions.

## I. BACKGROUND

### 1. St. John's Workers' Compensation Action

After suffering an injury in the course of his employment, St. John retained Zimmerman in March 2013 by signing a contingent fee agreement. Under the terms of that agreement, St. John agreed to pay to Zimmerman one-third of any amounts collected after suit.

St. John later moved to Colorado. Apparently desiring a Colorado lawyer, St. John discharged Zimmerman and retained Bartels, a Nebraska-licensed attorney based in Colorado. Bartels, in turn, hired Neilan to assist her with St. John's claim.

In January 2014, St. John executed a single contingent fee agreement with the respective law firms of Bartels and Neilan. Like his agreement with Zimmerman, St. John agreed to pay Bartels and Neilan one-third of any amounts recovered from Gering Public Schools. Paragraph 8 of the agreement, however, also included the following language:

> Should **CLIENT** choose to discharge **ATTORNEYS** prior to final settlement or judgment, **CLIENT** agrees to pay **ATTORNEYS** a fee equal to [one-third] of the "*gross amount recovered*", OR on an hourly basis of $175.00 per hour for his/her time and, in addition, $75 per hour for paralegal time from the date of this Agreement to the date of discharge, or the above percentage of **ATTORNEYS'** fee from any settlement offer made prior to discharge, whichever is greater.

(Emphasis in original.)

Bartels and Neilan thereafter filed a workers' compensation claim against Gering Public Schools on St. John's behalf. They continued to represent him until later in 2014, when St. John became dissatisfied with their representation and discharged them and again retained Zimmerman. At that time, St. John re-signed his original contingent fee agreement with Zimmerman. In December 2014, Zimmerman entered his

appearance and Bartels and Neilan filed a notice of attorney's lien in the workers' compensation case.

Over 2 years later, the parties to the workers' compensation claim, with St. John now represented by Zimmerman, filed an application for approval of a final lump-sum settlement. The parties asked that the compensation court approve a settlement whereby St. John's claim would be settled for $500,000, with $335,000 being paid to St. John and the remaining $165,000 being held in trust for subsequent distribution to his attorneys. The application provided that Bartels and Neilan and Zimmerman all agreed that the $165,000 satisfied any attorney liens in the case.

In an order, the compensation court approved the lump-sum settlement. The court noted the existence of the dispute involving claimed attorney liens and ordered that any of the attorneys claiming entitlement to attorney fees could petition the court for a hearing to address distribution of the funds placed in trust. Zimmerman filed a motion, requesting that the court determine the amount necessary to satisfy the attorney lien of Bartels and Neilan.

## 2. Workers' Compensation Court's
### Resolution of Fee Dispute

The compensation court convened a hearing on the dispute regarding the fees due to attorneys. The court heard testimony and received various exhibits. St. John and his ex-wife generally testified that they were dissatisfied with the services of Bartels and Neilan. The exhibits included the fee agreement between St. John and Zimmerman and the fee agreement between St. John and Bartels and Neilan, along with documentary evidence of legal services provided.

The compensation court entered an order dividing the $165,000 equally between Zimmerman, on the one hand, and Bartels and Neilan on the other. The compensation court explained that the factors for determining the reasonableness of attorney fees set forth in Neb. Ct. R. of Prof. Cond. § 3-501.5

guided its analysis. In applying those factors, the compensation court found that both Bartels and Neilan and Zimmerman "played a role of importance" in representing St. John and that it could not conclude that either Bartels and Neilan or Zimmerman contributed more than the other.

### 3. COURT OF APPEALS

Zimmerman appealed. In his appeal, Zimmerman argued that the compensation court erred by admitting an affidavit of an expert witness offered by Bartels and Neilan and by ordering that Bartels and Neilan and Zimmerman each receive the same fee. Zimmerman argued that the compensation court's order splitting the fees evenly was erroneous, because the court should have relied on the provision in the written fee agreement with Bartels and Neilan regarding payment due when the attorneys are discharged prior to final settlement or judgment.

The Court of Appeals affirmed. In its memorandum opinion, the Court of Appeals did not analyze the provision in the written fee agreement between St. John and Bartels and Neilan regarding payment due upon an early discharge. It did state that Bartels and Neilan's "contingent fee contract . . . provided a basis for determining Bartels and Neilan's fee in the event of their discharge prior to conclusion of the case," that "[t]here was sufficient evidence in the record for the compensation court to make a determination as to the reasonableness of that fee," and that the compensation court's findings as to what was a reasonable fee were not clearly erroneous. *St. John v. Gering Public Schools*, No. A-17-898, 2018 WL 1831068 at *7 (Neb. App. Apr. 17, 2018) (selected for posting to court website). We granted Zimmerman's petition for further review.

### II. ASSIGNMENTS OF ERROR

Zimmerman assigns error to the Court of Appeals' determination that Bartels and Neilan and Zimmerman should each receive $82,500 for their representation of St. John.

Zimmerman also claims that the Court of Appeals erred when it rejected his assignment of error regarding the admission of the expert witness affidavit. We find no error in the Court of Appeals' admission of the affidavit and see no need to further comment on the issue. Our analysis is thus limited to the compensation court's ultimate disposition of the fee dispute.

## III. STANDARD OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Gimple v. Student Transp. of America*, 300 Neb. 708, 915 N.W.2d 606 (2018). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

## IV. ANALYSIS

### 1. Jurisdiction of Workers' Compensation Court to Decide Fee Dispute

We begin with the question of whether the Workers' Compensation Court had the authority to resolve the fee dispute. As we often say, the Workers' Compensation Court is "a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute." *In re Estate of Evertson*, 295 Neb. 301, 311, 889 N.W.2d 73, 81 (2016). Given the limits on the compensation court's authority, one might reasonably question whether it has the authority to resolve competing attorneys' claims to fees after the approval of a lump-sum settlement, as the compensation court did in

this case. In fact, at one point, the Court of Appeals concluded that the compensation court lacked jurisdiction to resolve such a dispute. See *Wells v. Goodyear Tire & Rubber Co.*, 14 Neb. App. 384, 707 N.W.2d 438 (2005), *disapproved in part, Foster v. BryanLGH Med. Ctr. East*, 272 Neb. 918, 725 N.W.2d 839 (2007).

We settled any question as to whether the Workers' Compensation Court has jurisdiction to resolve such a dispute in *Foster, supra*. In *Foster*, much like this case, a workers' compensation plaintiff discharged her attorney in the middle of the case. After the plaintiff, represented by a new attorney, was awarded benefits from her employer, the discharged attorney filed a motion to establish the amount of his attorney's lien. The Court of Appeals, citing *Wells, supra*, held that the compensation court lacked jurisdiction to resolve the discharged attorney's motion.

On further review, we reversed. We explained that Neb. Rev. Stat. § 48-108 (Reissue 2010) provides the compensation court with authority to determine "fees payable to an attorney for the services rendered while representing the claimant before the Workers' Compensation Court" and that the authority extended to fees claimed by attorneys who are discharged prior to the conclusion of the case. *Foster*, 272 Neb. at 922, 725 N.W.2d at 844. We observed that the compensation court is "the most sensible venue for such determinations," given its familiarity with the efforts of each attorney involved in the dispute. *Id.* at 923, 725 N.W.2d at 844. We also recognized that under the circumstances in *Foster*, "as in most instances, the fee dispute with former counsel is inextricably related to the issue of fees for the claimant's current counsel." 272 Neb. at 922, 725 N.W.2d at 844.

Under *Foster*, the Workers' Compensation Court had authority to resolve the competing attorney liens asserted in this case. See, also, *Stueve v. Valmont Indus.*, 277 Neb. 292, 297, 761 N.W.2d 544, 549 (2009) ("[i]n *Foster*, we stated that the Workers' Compensation Court was an appropriate forum

for determining fees payable to a claimant's current or prior attorney for services that the attorney rendered while representing the claimant before the court"). We thus proceed to consider Zimmerman's claim that the compensation court erred in doing so.

## 2. MERITS OF FEE DISPUTE

Zimmerman's primary contention on appeal is that the compensation court erred by focusing solely on the respective contributions of the attorneys under the factors set out in the Nebraska Rules of Professional Conduct for determining whether a fee is unreasonable. Zimmerman contends that to determine the attorneys' entitlement to fees, the compensation court was required to begin with the terms of the respective fee agreements with St. John. Specifically, Zimmerman urges that Bartels and Neilan's recovery must be limited to that allowed by the terms of the provision in their fee agreement addressing the amount they were to receive if St. John discharged them before the case was over. In order to address this argument, we begin by setting forth the general principles that govern an action by an attorney to recover a fee.

### (a) General Principles Regarding Actions for Attorney Fees

As we have previously observed, attorney fee agreements are different from ordinary commercial contracts. See, e.g., *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007). The difference arises from the fact that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility. *Id.* Because of that principle and because professional responsibility rules prohibit a lawyer from charging or collecting an unreasonable fee, in an action to recover a fee, an attorney can recover only a reasonable fee, as determined by "'the extent and value of the lawyer's services.'" *Id.* at 931, 735 N.W.2d at 374. The burden is on the lawyer to

introduce evidence as to the extent and value of the services provided. *Id.* We have said that the eight factors listed in § 3-501.5 of the professional conduct rules are to be considered as guides in determining the reasonableness of a fee. See *Stueve, supra.*

But while the reasonable value of an attorney's services is relevant in an action to recover attorney fees, it is not the only relevant factor. In an action to recover a fee, a lawyer has the burden of proving not only the extent and value of the services provided, but also "'the existence and terms of any fee contract.'" *Hauptman, O'Brien*, 273 Neb. at 931, 735 N.W.2d at 374. This is because when an attorney and a client enter into a valid fee agreement, the attorney is not automatically entitled to the reasonable value of the services provided. The attorney's recovery is limited by the terms of the fee agreement.

[3] As the U.S. Court of Appeals for the Seventh Circuit has helpfully explained the issue, a lawyer working under a valid fee agreement does not have a quantum meruit cause of action for whatever the reasonable value of the services provided happened to be; rather, the quantum meruit principle functions as a "ceiling on contractual recovery." *Maksym v. Loesch*, 937 F.2d 1237, 1247 (7th Cir. 1991). See, also, *McNamee, Lochner, Titus & Williams v. Higher Educ.*, 50 F.3d 120 (2d Cir. 1995) (holding that attorney was not entitled to quantum meruit recovery when contract addressed compensation); *Hamilton v. Ford Motor Co.*, 636 F.2d 745, 748 (D.C. Cir. 1980) ("[i]t is elementary that an attorney may not seek compensation from the client in addition to that provided in the contract between the attorney and the client"). Put another way, while a lawyer with a valid fee agreement is entitled to recover from a client what a fee agreement allows to the extent that amount is reasonable, a lawyer is not entitled to recover from a client more than a fee agreement allows. Having set forth the principles governing an attorney's claim to an unpaid fee, we proceed to consider how those principles should be applied in this case.

### (b) Application of Principles
### in This Case

As explained above, where an attorney and client have a valid fee agreement, the terms of that agreement are essential to determining the amount to which the attorney is entitled. In this case, however, even though the fee agreements with both sets of lawyers were received at the hearing, the compensation court did not analyze them. Rather, it focused solely on the respective value of the services provided by the lawyers. Bartels and Neilan contend the compensation court was correct to do so because of an agreement between the parties and because this approach was consistent with our precedent. As explained below, we disagree with both arguments.

First, Bartels and Neilan argue that the parties effectively stipulated to trying the fee dispute on the basis of the value of the attorney's respective contributions alone in the application for approval of the lump-sum settlement. That application stated that "[i]t is also agreed to by all necessary parties and attorneys that the amount of $165,000.00, however later distributed, satisfies any attorney liens owed by [St. John]." We do not believe that this language demonstrates an agreement to withdraw the fee agreements from the compensation court's consideration. By its terms, the parties agreed only that $165,000, however distributed, would satisfy St. John's obligations to his attorneys. We understand this language to merely set an upper limit of the amount St. John was required to pay the attorneys.

Neither was the compensation court's decision to limit its consideration to the reasonable value of the services provided justified by *Baker v. Zikas*, 176 Neb. 290, 125 N.W.2d 715 (1964), and *Stueve v. Valmont Indus.*, 277 Neb. 292, 761 N.W.2d 544 (2009), as Bartels and Neilan contend. In those cases, attorneys who were working under a contingent fee agreement, which agreement did not address what the attorneys were to receive if discharged prior to recovery, were discharged prior to recovery. In those circumstances, we allowed

the attorney to recover based on the reasonable value of the services provided, on the grounds that the original contingent fee contract was no longer in effect following the client's termination of the lawyer's services.

Unlike the fee agreements in *Baker* and *Stueve*, Bartels and Neilan's fee agreement explicitly addressed what they were entitled to be paid in the event of an early discharge. In this respect, this case is more like another case decided by the Court of Appeals, *Byrne v. Hauptman, O'Brien*, 9 Neb. App. 77, 608 N.W.2d 208 (2000). In that case, like this one, an attorney's contingent fee agreement explicitly provided a method for calculating the fee owed in the event the attorney was discharged before the end of the case. The Court of Appeals distinguished the fee agreement from the one at issue in *Baker* and held that the attorney could recover the amount allowed by the contract, subject to the attorney's burden to show that the amount was reasonable.

We believe the Court of Appeals' opinion in *Byrne* correctly applied the principles governing actions for recovery of attorney fees in circumstances such as this. Accordingly, to determine the amount to which the attorneys are entitled, we must first determine the amount the attorneys are allowed under their fee agreements and then determine if that amount is reasonable. We proceed to that analysis below, beginning with Bartels and Neilan.

### (c) Bartels and Neilan's Recovery

As mentioned above, paragraph 8 of Bartels and Neilan's fee agreement governs the amount they are entitled to receive from St. John because they were discharged prior to final settlement or judgment. That provision directs that Bartels and Neilan receive the highest of three potential amounts: (1) "[one-third] of the '*gross amount recovered*,'" (2) a recovery based on the hours they expended at specified rates, or (3) a percentage of any settlement offer made prior to discharge. Bartels and Neilan concede that there was no settlement

offer made prior to discharge, and thus that provision is inapplicable.

Bartels and Neilan contend that under the terms of the fee agreement, they are entitled to receive one-third of the $500,000 lump-sum settlement, subject to some minor adjustments for costs. Although they do not specifically tie this argument to the language of paragraph 8 of their fee agreement, we presume that they are contending that they are entitled to this amount because $500,000 is the "gross amount recovered." This argument, however, rests on the premise that for purposes of paragraph 8, "gross amount recovered" refers to the amount ultimately recovered at the conclusion of the case. For reasons explained below, we reject that premise.

Bartels and Neilan's fee agreement defines "gross amount recovered" to include "the amount recovered before any subtraction of expenses and disbursements [and] specially awarded attorneys' fees and costs awarded to **CLIENT**." (Emphasis in original.) But it does not specifically indicate whether the "gross amount recovered" referred to in paragraph 8 is the amount eventually recovered at the end of the case or the amount recovered as of the attorney's discharge. The fact that "gross amount recovered" appears in a provision concerning early discharge, however, suggests that in that context, it refers to the amount recovered as of the discharge.

[4] Furthermore, it strikes us as unreasonable and highly unlikely that a client would agree to pay a lawyer one-third of his or her recovery if the lawyer represented the client through the entirety of the case but also agree to pay a lawyer the same percentage of the total amount recovered if that lawyer is discharged and another lawyer ultimately secures the recovery for the client. On the other hand, it would be quite reasonable for a contractual provision regarding payment to a discharged attorney to allow the attorney to recover a percentage of any amounts already recovered on behalf of the client through partial settlement as of the date of discharge. A court should avoid interpreting contract provisions in a manner that leads to

unreasonable or absurd results that are obviously inconsistent with the parties' intent. *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015). With that principle in mind, we find that, the "gross amount recovered" in paragraph 8 of Bartels and Neilan's fee agreement refers to the amount recovered as of the attorney's discharge.

Having interpreted paragraph 8 of the Bartels and Neilan contingent fee agreement, we find that Bartels and Neilan are entitled to a fee based on the hourly calculation set forth in the paragraph. Bartels and Neilan make no argument that they are entitled to a fee based on amounts recovered prior to their discharge; their arguments are exclusively focused on a right to recovery arising out of the $500,000 lump-sum settlement. That settlement, however, was agreed to well after their discharge. And, as noted above, they concede there was no settlement offer prior to discharge.

Evidence in the record does show that Bartels documented 79.9 hours of work, Neilan documented 81 hours of work, and paralegals working under their direction recorded 25.6 hours of work. Applying those hours to the rates set forth in the agreement, we find that Bartels and Neilan were entitled to receive $30,077.50 under the terms of their agreement with St. John. Given the hourly rates and their representation of St. John in the context of this case, we also find this amount to be a reasonable fee. In addition, Bartels and Neilan claim a right to be reimbursed for $2,500 paid in costs on behalf of St. John, and there appears to be no dispute on this issue. Accordingly, we find that Bartels and Neilan were entitled to receive $32,577.50 to satisfy their lien.

### (d) Zimmerman's Recovery

This leaves the calculation of Zimmerman's fee. We apply the same analysis to his claim, and so we must begin with his contingent fee agreement. Zimmerman's contingent fee agreement entitled him to one-third of any lump-sum settlement. In this case, that amounts to $166,666.67. As mentioned above,

however, the attorneys agreed that St. John would have to pay no more than $165,000 to satisfy the attorneys' liens. Given that agreement and our finding that Bartels and Neilan are entitled to receive $32,577.50, the most Zimmerman is entitled to receive is $132,422.50.

In addition, we find this figure to be a reasonable fee. As the compensation court observed, "the ultimate settlement figure secured by . . . Zimmerman for [St. John] did exceed the settlement value provided by attorney Neilan to [St. John] several years prior. In so doing, attorney Zimmerman obviously persuaded the defendants that a significant permanent disability had befallen . . . St. John." Under these circumstances, we find $132,422.50 to be a reasonable fee.

## V. CONCLUSION

As explained above, we find that Bartels and Neilan were entitled to receive $32,577.50 and Zimmerman was entitled to receive $132,422.50. Accordingly, we reverse the judgment of the Court of Appeals and remand the cause with directions to reverse the order of the Workers' Compensation Court and remand the cause to that court with directions to enter judgment in conformity with this opinion.

Reversed and remanded with directions.