Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2023 08:05 AM CDT

SIEG H. BRAUER, DOING BUSINESS AS BRAUER LAW
OFFICE, APPELLANT, v. KENT HARTMANN AND
HARTMANN HAY CO., LLC, APPELLEES.

___ N.W.2d ___

Filed April 7, 2023.    No. S-22-248.

1. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.
2. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.
3. **Attorney Fees: Courts.** Courts have traditional authority to supervise the charging of fees for professional services under their inherent power to regulate the practice of law.
4. **Attorney Fees.** An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and are inconsistent with the character of the profession.
5. ____. Contingency fees are recoverable only if reasonable.
6. **Attorney Fees: Contracts: Proof.** In a suit to recover an unpaid fee, the lawyer has the burden of persuading the trier of the fact, when relevant, of the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services.
7. **Attorney and Client.** The value of a lawyer's services is ordinarily a question of fact.
8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.
9. **Fraud: Proof.** A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth

and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.

Appeal from the District Court for Hall County, Rachel A. Daugherty, Judge, on appeal thereto from the County Court for Hall County, Alfred E. Corey III, Judge. Judgment of District Court affirmed.

Sieg H. Brauer, of Brauer Law Office, for appellant.

John C. Hahn, of Baylor, Evnen, Wolfe & Tannehill, L.L.P., for appellees.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Cox, District Judge.

Funke, J.

## INTRODUCTION

An attorney sued his former clients, alleging three separate causes of action: breach of contract per an hourly fee agreement, breach of contract per a contingency fee agreement, and fraudulent misrepresentation. The county court found for the attorney on his first cause of action but against him on his second and third causes of action. The attorney appealed to the district court, which affirmed with some minor modifications. The attorney appeals. For the reasons stated below, we affirm.

## BACKGROUND

### Underlying Litigation

Sieg H. Brauer is a licensed attorney doing business as Brauer Law Office. Kent Hartmann and Kirk Hartmann are brothers and were, at all relevant times, joint owners of Hartmann Hay Co., LLC (HHC), a farming and livestock company. In December 2015, Kent met with Brauer about a claim that HHC wanted to bring against Wilbur-Ellis Company (WECO). WECO had provided agricultural services to HHC;

according to Kent, WECO had negligently misapplied chemicals and caused some of HHC's crops to fail during the 2014 crop year. Kent explained to Brauer that a setoff might be possible insofar as WECO had a potential claim against him for nonpayment of charges for chemicals and services. Brauer prepared an engagement letter, as well as a contingency fee agreement. In his engagement letter, dated January 7, 2016, Brauer explained:

> This will serve to confirm our discussions on December 21, 2015 regarding the crop damages you suffered in 2014 and your request for representation under a contingent fee agreement.
>
> I have prepared a fee agreement pursuant to those discussions. It provides that I will pursue your claim for damages to your crop in 2014 caused by untimely chemical application by [WECO]. It is further understood, that you have an outstanding balance due to [WECO] that may provide incentive for settlement of your damage claim as an offset to the damage claim, and that my fee will be based on the amount determined to constitute the value of your crop damages.

Kent signed the contingency fee agreement and returned it to Brauer. The contingency fee agreement provided, in relevant part:

> This writing confirms and memorializes the terms agreed to by Kent Hartman [sic] (CLIENT) and BRAUER LAW OFFICE (ATTORNEY) for providing legal representation regarding CLIENT'S claim in the following matter(s) (OCCURRENCE):
>
> Farm crop damages due to negligent chemical application in 2014 crop year.
>
> 1. Client desires to employ Attorney under a CONTINGENCY FEE agreement.
>
> A. The Client shall pay as ATTORNEY COMPENSATION for services rendered 33 1/3% of the total

recovery of moneys, value received, or value of proper-
ties recovered in prosecution of CLIENT'S claim.*

. . . .

* CLIENT acknowledges and agrees that ATTORNEY
is entitled to the value of any debt cancelled in calcu-
lating the value of any recovery obtained as a result
of prosecution of CLIENT'S claim relating to the
OCCURRENCE.

Brauer later sent Kent an "Hourly Fee Agreement" for
"General Matters Including Defending Claim by [WECO]
for Chemicals." The document was never signed and returned;
however, the parties agree that with respect to WECO's claim
against Kent, Brauer agreed to defend Kent for a fee of $100
per hour.

On February 29, 2016, Brauer, on behalf of HHC, filed
a claim against WECO for crop damages of approximately
$163,000. On March 23, WECO filed a claim against Kent
for nonpayment of charges for chemicals and services in
the amount of approximately $126,000. The matters were
removed to federal court per diversity jurisdiction and even-
tually consolidated. Litigation continued for over a year, and
HHC eventually filed for bankruptcy protection. Thereafter,
on August 21, 2017, Kent and, purportedly, Kirk executed a
guaranty with respect to Brauer's fees for services "previously
and hereinafter rendered." HHC and WECO ultimately settled
and dismissed their claims against one another with prejudice.
As part of the settlement, neither HHC nor WECO admitted
liability. On March 9, 2018, HHC and WECO obtained judicial
approval of their settlement. Brauer billed Kent and HHC for
unpaid fees and costs. For the most part, Kent and HHC failed
or refused to provide the requested payments.

PROCEDURAL HISTORY

On July 22, 2019, Brauer brought a claim against Kent,
Kirk, and HHC for unpaid fees and expenses, initially alleg-
ing two causes of action. Brauer's first cause of action

concerned unpaid fees for his defense of Kent. On that cause of action, Brauer admitted that he had been paid $3,500 but claimed a remaining balance of $3,906.70. Brauer's prayer for relief requested a judgment in the amount of $3,876.70, plus interest. Brauer's second cause of action concerned his representation of HHC in its claim against WECO. On that cause of action, Brauer requested a remaining balance of $42,474.50, plus interest, which included $474.50 in expenses. Brauer's position was that the value of the settlement was "not less than $126,000.00" and that he was entitled to one-third of "such value" under the terms of the contingency fee agreement. Brauer attached to his complaint copies of the engagement letter he had sent to Kent, the contingency fee agreement he had executed with Kent, and the personal guaranty that Kent and, purportedly, Kirk had signed in August 2017.

In his answer, Kirk broadly denied engaging Brauer to provide legal services. "All of these discussions," he wrote, "were between [sic] Kent . . . , who held himself out . . . as being the managing member of [HHC]." Kirk also denied signing the guaranty attached to Brauer's complaint. In a separate answer, Kent and HHC argued that Brauer was not entitled to any damages with respect to his second cause of action, because the settlement agreement that Brauer negotiated did not result in any recovery, res, or fund out of which to pay a contingency fee. Kent and HHC also argued that the contingency fee agreement is not fair and reasonable as required by law and that because "the value recovered by [Brauer] to [Kent and HHC], if any, is not reasonably determinable," the contingency fee agreement is unenforceable.

In April 2020, Brauer amended his complaint, adding a third cause of action against Kent for fraudulent misrepresentation. In his amended complaint, Brauer alleged Kirk had averred that he had not executed the guaranty attached to Brauer's complaint and that Kent had affixed Kirk's signature to the document. If this were determined to be true, Brauer argued, then Kent's delivery of the signed guaranty to Brauer

constituted fraud. Brauer argued that he had relied on the guaranty, supposedly signed by Kent and Kirk, in continuing representation of them in the federal cases after HHC filed for bankruptcy protection.

## Relevant Admissions

Prior to trial, the county court deemed certain matters conclusively established for the remainder of litigation under Neb. Ct. R. Disc. § 6-336. Section 6-336 concerns the discovery device of requests for admission and provides that untimely responses thereto will be deemed admissions and will be conclusively established for all trial purposes unless the court, on motion, permits withdrawal or amendment.

Both Kent and HHC failed to respond to Brauer's first set of requests for admissions in a timely manner. Eventually, Kent and HHC moved to withdraw and amend their responses to Brauer's first set of requests for admissions. The county court denied their motion. As a result, certain matters were deemed conclusively established for the remainder of litigation. As to Kent, these matters included, as relevant:

> **ADMISSION NO. 23:** Admit that as a result of the settlement between you, HHC and WECO, HHC received a benefit in the WECO Claim of not less than $126,631.75.
>
> . . . .
>
> **ADMISSION NO. 24:** Admit that as a result of the settlement between you, HHC and WECO you received a benefit in the WECO claim of not less than $126,631.75.

As to HHC, these matters included, as relevant: **ADMISSION NO. 22:** Admit that as a result of the settlement between you, Kent Hartmann and WECO, HHC received a benefit in the WECO Claim of not less than $126,631.75.

## Trial and Judgment

Days before trial, Brauer moved to dismiss Kirk from the action without prejudice. The county court dismissed Kirk,

and the matter proceeded to trial only against Kent and HHC. Kent's and HHC's deemed admissions were received into evidence by the county court. In development of the fraud claim, a certified forensic document examiner and handwriting identification expert testified on behalf of Brauer. She opined that Kirk did not sign the guaranty and that it was highly probable that the same person signed it twice, i.e., that Kent signed the document on his own and also forged Kirk's signature.

On August 25, 2021, the county court entered a judgment. The court found for Brauer on his first cause of action. But the court found for Kent and HHC on Brauer's other causes of action. Specifically, the court concluded that Brauer was not entitled to recover under the contingency fee agreement. The county court also found that Brauer did not prove damages as necessary to recover for fraudulent misrepresentation. Brauer appealed to the district court.

### Appeal to District Court

On appeal from the county court's judgment, as to Brauer's first cause of action, both parties agreed that the postjudgment interest rate entered was incorrect. The district court affirmed the county court's decision as modified, remanding the matter with directions to modify the judgment interest. Brauer agrees with the district court's determination as to his first cause of action and raises no further issue on appeal. Kent and HHC do not cross-appeal.

Regarding Brauer's second cause of action, the district court noted as a preliminary matter that Nebraska law was unclear as to whether the parties' contingency fee agreement, as written, was enforceable.[1] Nonetheless, it assumed, arguendo, that it was. The district court observed that the deemed

---

[1] See, e.g., *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331 (Iowa 1980) (holding that contingency fee agreement for defense of unliquidated tort damage claim, based upon percentage of difference between prayer of petition and amount awarded, is void as unreasonable and against public policy).

admissions, as written, stated that Kent and HHC "'received a benefit in the WECO *claim* of not less than $126,631.75.'" The court found, however, that although Kent and HHC did receive a benefit as a result of Brauer's services in the claim against them by WECO, they had entered into a separate contract to pay Brauer for defending them from that claim on an hourly basis. As to HHC's claim against WECO, the district court found that there was no evidence a certain debt was ever owed to WECO and then canceled. Thus, the admissions were not fatal to Kent's and HHC's defense. The court found error, however, in the county court's failure to award $474.50 in costs and affirmed as modified.

As to Brauer's third cause of action for fraudulent misrepresentation, the district court affirmed, agreeing with the county court that Brauer had failed to prove damages.

## ASSIGNMENTS OF ERROR

Brauer assigns, consolidated and restated, that the district court erred in (1) affirming the district court's order denying him fees under the contingency fee agreement by (a) failing to apply the terms of the contingency fee agreement, (b) failing to properly apply discovery rules regarding conclusively established admissions, (c) finding that Brauer presented insufficient evidence of a benefit received by Kent and HHC per HHC's claim against WECO, and (d) finding that there was no evidence of a certain debt owed WECO by Kent and/or HHC that was canceled, as well as in (2) affirming the county court's decision that there was no fraudulent misrepresentation after concluding that Brauer had failed to prove fraud damages.

## STANDARD OF REVIEW

[1] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.[2]

---

[2] *Dion v. City of Omaha*, 311 Neb. 522, 973 N.W.2d 666 (2022).

[2] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.[3]

## ANALYSIS

### Contingency Fee Agreement

[3,4] Courts have traditional authority to supervise the charging of fees for professional services under their inherent power to regulate the practice of law.[4] Attorney fee agreements are different from conventional commercial contracts: The difference arises from the fact that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and are inconsistent with the character of the profession.[5] The Nebraska Rules of Professional Conduct, which are currently in effect, provide that a lawyer may not enter into an agreement for, charge, or collect an unreasonable fee.[6] Therefore, when determining a satisfactory fee for services, the primary inquiry is reasonableness.[7]

[5-7] Contingency fees are recoverable only if reasonable.[8] In order for the reasonableness of a particular fee to be determined, the extent and value of the lawyer's services must first be established.[9] In a suit to recover an unpaid fee, the

---

[3] *132 Ventures v. Active Spine Physical Therapy, ante* p. 45, 982 N.W.2d 778 (2022).

[4] *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000).

[5] *St. John v. Gering Public Schools*, 302 Neb. 269, 923 N.W.2d 68 (2019). See, also, *Hauptman, O'Brien v. Turco*, 273 Neb. 924, 735 N.W.2d 368 (2007), and Restatement (Third) of the Law Governing Lawyers, § 34, comment *b*. (2000) (lawyers owe their clients greater duties than are owed under general law of contracts).

[6] Neb. Ct. R. of Prof. Cond. § 3-501.5.

[7] *Stueve v. Valmont Indus.*, 277 Neb. 292, 761 N.W.2d 544 (2009).

[8] *Hauptman, O'Brien v. Turco, supra* note 5.

[9] *St. John v. Gering Public Schools, supra* note 5.

lawyer has the burden of persuading the trier of fact, when relevant, of the existence and terms of any fee contract, the making of any disclosures to the client required to render a contract enforceable, and the extent and value of the lawyer's services.[10] The value of a lawyer's services is ordinarily a question of fact.[11]

A lawyer can establish the extent and value of his or her services in a contingency fee case by producing evidence showing, for example, the results obtained, the quality of the work, and whether the lawyer's efforts substantially contributed to the result.[12] Other factors relevant to the reasonableness of a contingency fee include the time and labor required; the novelty and difficulty of the legal issues involved; the skill required to do the work properly; the experience, reputation, and ability of the lawyer performing the services; and the fee customarily charged in the locality for similar legal services.[13] While the pertinent factors will differ from case to case, the general inquiry should focus on the circumstances of the agreement and the work performed.[14] Where a contingency fee is incommensurate with the value of the services rendered by the attorney in exchange, the fee may be unreasonable.[15] In other words, an attorney must produce evidence that establishes a prima facie case that his or her fee is reasonable.[16] Once the attorney has done so, the evidentiary burden going forward shifts to the client, and the client must object to the evidence established by the attorney

---

[10] *Hauptman, O'Brien v. Turco, supra* note 5.

[11] *Id.*

[12] *Hauptman, O'Brien v. Turco*, 277 Neb. 604, 764 N.W.2d 393 (2009).

[13] *Id.* See, also, Neb. Ct. R. of Prof. Cond. § 3-501.5 (listing eight factors to be considered in determining reasonableness of attorney fee).

[14] *Hauptman, O'Brien v. Turco, supra* note 12.

[15] See 7A C.J.S. *Attorney & Client* § 469 (2015) (citing *King v. Fox*, 7 N.Y.3d 181, 851 N.E.2d 1184, 818 N.Y.S.2d 833 (2006)).

[16] *Hauptman, O'Brien v. Turco, supra* note 12.

with specificity to demonstrate why the documented fees are not reasonable.[17]

Here, the evidence at trial established that Brauer and Kent entered into two fee agreements, one being an hourly fee agreement and one being a contingency fee agreement. Brauer was previously paid $3,500 toward the hourly fee agreement and has received a judgment in the amount of an additional $3,876.70 under the hourly fee agreement. No party challenges these amounts. Brauer seeks to recover an additional $42,474.50 under the contingency fee agreement; thus, Brauer must produce evidence that the additional sum he demands is reasonable based on the work he has performed and the value he has provided through his services.

The record includes two sets of billing statements created and maintained by Brauer Law Office. The billing statements appear to use matter numbers to differentiate between individual matters for the same client: While both ledgers display the client number for "Hartmann, Kent," one displays a matter number for "Crop/Chemical Damage" and the other displays a matter number for "Wilbur Ellis Collection." The billing statements contain corresponding notations of the time spent and the hourly rate charged. All of the billing entries in the matter regarding "Crop/Chemical Damage" designate no charge, while the billing entries in the matter regarding "Wilbur Ellis Collection" designate a rate of $100 per hour. The billing statements indicate 76.4 hours of service for the "Crop/Chemical Damage" matter and 64.8 hours of service for the "Wilber Ellis Collection" matter. Of the hours billed, 31.8 hours showed the exact same description of work for both matters and 30.6 and 25.3 hours, respectively, showed nearly the same description of work for both matters. While maintained separately, these records are functionally inextricable: The majority of the billings under each matter appear under the other, either identically or similarly. This presumably reflects

---

[17] *Id.*

the reality that the cases were consolidated. We are unable to conclusively determine from the record whether the mirrored billings are bifurcated or duplicative.

Brauer was cognizant of the potential for "overlap" between the parties' operative fee agreements. Brauer testified at trial that as to Kent, he had reduced his hourly rate of $200 per hour by 50 percent to account for the fact that "work done on both sides of the case or the two cases would often overlap" and that "it wasn't going to require inventing a new wheel for each aspect of each case." Brauer testified that Kent was "agreeable" to the reduced hourly rate on account of the potential for overlap. Thus, the situation before us is that of a reduction in an attorney's hourly rate entangled with a simultaneously operative contingency fee agreement. Notably, however, we are not called upon to review one "hybrid" fee agreement—Brauer pled the existence of, and has sought to enforce, two distinct contracts.

[8] Accordingly, it suffices to say that Brauer has produced insufficient evidence of the work performed and value provided pursuant, specifically, to the contingency fee agreement. We can only speculate as to whether or not the claimed fee computed pursuant to the contingency fee agreement is reasonable.[18] Resultingly, Brauer has not met his burden in attempting to enforce the contingency fee agreement; because this conclusion is dispositive as to Brauer's request for a contingency fee, we do not reach his assigned errors thereunder. Moreover, we express no opinion as to the general enforceability of what the appellees have labeled a "reverse" contingency fee agreement under Nebraska law. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[19]

---

[18] Cf. *Hauptman, O'Brien v. Turco, supra* note 5. See, also, *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011) (appellate court cannot consider as evidence statements made by parties in briefs, because these are matters outside record).

[19] *Schaeffer v. Frakes, ante* p. 337, 984 N.W.2d 290 (2023).

FRAUDULENT MISREPRESENTATION

Brauer argues that the district court erred in affirming the county court's decision that there was no fraudulent misrepresentation.

[9] A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.[20]

The district court concluded that Brauer failed to prove damages as a necessary element of fraudulent misrepresentation. We agree. Brauer argues that Kent induced him to rely upon a fraudulent guaranty of a contingency fee agreement under which Brauer cannot recover. Because Brauer cannot recover under the contingency agreement, Brauer cannot recover for his reliance upon a fraudulent guaranty of that agreement. The district court did not err in holding the same.

CONCLUSION

For the reasons discussed, the district court's judgment is affirmed.

AFFIRMED.

MILLER-LERMAN, J., not participating.

---

[20] *Nathan v. McDermott*, 306 Neb. 216, 945 N.W.2d 92 (2020).