**URESIL CORPORATION, Plaintiff,**

v.

**COOK GROUP, INCORPORATED, Wilson–Cook Medical Group & Cook Urological Incorporated, Defendants.**

**COOK, INC., Counterplaintiff,**

v.

**URESIL CORPORATION, Counterdefendant.**

**No. 88 C 6171.**

United States District Court, N.D. Illinois, E.D.

March 7, 1991.

Barry W. Sufrin, Laff, Whitesel, Conte & Saret, Chicago, Ill., for plaintiff.

Aaron J. Kramer, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

EDWARD A. BOBRICK, United States Magistrate Judge.

Before this court is the renewed motion of Defendants/Counterplaintiffs Cook Incorporated, Wilson–Cook Medical Group Inc., and Cook Urological Incorporated (hereinafter "Cook") TO COMPEL DISCOVERY AND FOR THE ENTRY OF A WRITTEN ORDER DOCUMENTING THE COURT'S PRIOR ORAL RULINGS. By way of this motion, Cook seeks to (1) strike the expert witness interrogatory answers of the Plaintiff/Counterdefendant Uresil Corporation (hereinafter "Uresil") given to interrogatory number 14, and bar expert testimony on behalf of Uresil, or in the alternative, move for an order permitting Cook to depose Uresil's experts and (2) compel Uresil to supplement its response to Cook's interrogatories numbers 2, 3, and 10 through 13 relating to claims of misappropriation and damages. Cook also seeks entry of a written order documenting the Court's oral ruling of November 30, 1990.

## FACTUAL BACKGROUND

This order arises out of a trade secret dispute between the parties. The plaintiff/counterdefendant in this case, Uresil, is a company which designs, manufactures and sells catheters and other medical devices. It claims that the defendant/counterplaintiff, Cook, also a company which designs, manufactures and sells catheters, stole its trade secrets relating to the design and manufacture of a particular valved catheter at the center of this controversy.

The discovery in this case has been lengthy, bearing many areas of contention which, until this point, have been amicably resolved without the need for an order from the court. Extensive discovery conferences were held in this matter in late August and mid-September, 1990; as a result, joint agreed extensive discovery schedule was entered into between the parties. Notwithstanding that agreement, trouble began to brew concerning the suffi-

ciency of Uresil's answers to Cook's interrogatories concerning Uresil's "experts." More than several attempts were made at having Uresil voluntarily supplement its acknowledged insufficient answers to Cook's "expert interrogatories," upon complaint made by Cook. Finally on November 10, 1990, Cook moved to bar Uresil's experts from testifying at trial, or in the alternative to permit Cook to depose those experts. Again, in an effort to find some amicable resolution to Cook's motion, Uresil was again sent back to the drawing board to supplement what were clearly inadequate answers to the expert interrogatories. Finally on December 21, 1990, Uresil filed the instant motion.

It now appears we've reached that point where this court cannot realize an amicable resolution to the current discovery impasse without a ruling on Uresil's motion and, if appropriate, the imposition of a well-fashioned discovery order. Accordingly, we first review the primary issue regarding whether the plaintiff/counterdefendant, Uresil, has answered defendant/counterplaintiff, Cook's, interrogatories number 14 parts 1 through 12, directed at expert witness testimony completely, and whether Uresil has given complete and sufficient answer to interrogatories relating to claims for misappropriation and claims for damages.

## EXPERT INTERROGATORIES

It goes without saying that in highly technical cases, such as those dealing with trade secrets or patents, the necessity to accomplish comprehensive discovery of expert evidence is paramount to each party's objective goals in the case. In the present case Cook, understandably, declares itself at a disadvantage in this regard by virtue of Uresil's failure to adequately respond to discovery under Rule 26(b)(4)(A)(i) of the Federal Rules of Civil Procedure. Cook argues that Uresil's responses to the expert witnesses' interrogatories it propounded were insufficient and therefore should either be stricken or it should be permitted to depose the experts prior to trial. Cook maintains Uresil's inadequate responses degrade its defenses imposed herein. Uresil, on the other hand, argues that its answers

are a blue print of those provided by Cook and therefore its answers should not be stricken nor should Cook be permitted to depose its expert witnesses. In the alternative, Uresil argues that if it must supplement its answers, so, too should Cook.

We will not examine the parties' expert witness interrogatories in relation to each other as Uresil suggests because Uresil's and Cook's experts, to this point, have answered interrogatories on different matters and thus cannot, and should not, be compared. The experts provided by Cook will testify with regard to the defamation issue, whereas the experts provided by Uresil will testify with regard to technical matters related to the catheters, and their components, which are at issue in this case. Consequently, each party's expert interrogatory answers will be taken on their face, separately from the opposing party's answers.

### I. Required Completeness of Answers Posed to Interrogatories Under Rule 26(b)(4)

The Supreme Court of the United States stated that the purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Moreover, the Court, in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), stated that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end a party may compel the other to disgorge whatever facts he has in his possession ... thus reducing the possibility of surprise."

Lending this basic principal to interrogatories, the Fifth Circuit Court of Appeals explained that "[d]iscovery by interrogatory requires candor in responding ... The candor required is a candid statement of the information sought or of the fact that objection is made furnishing the information." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir.1977). Furthermore, "[t]he question of what constitutes satisfactory responses to interrogatories rests within the sound discretion of the Court and includes the consideration of un-

due burden to the parties." *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 316 (E.D.Penn.1980).

Federal Rule of Civil Procedure 26(b)(4) sets forth the general requirements for taking discovery of expert witnesses. The Rule mandates that "any discovery of an expert 'expected to testify at trial' must be obtained by way of written interrogatories." *Jefferson v. Davis*, 131 F.R.D. 522, 525 (N.D.Ill.E.D.1990). Further, Rule 26(b)(4) entitles a party to discover (1) the identity of "each person whom the other party expects to call as an expert witness at trial," (2) "the subject matter on which the expert is expected to testify" and (3) "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." *Id.*, Fed.R.Civ.P. 26(b)(4)(A)(i).

■ It is well settled that the primary purpose of this Rule is to facilitate effective cross-examination and rebuttal of expert testimony and to provide the judge with information as "what area of expertise will be presented." *Jefferson*, 131 F.R.D. at 525. Consequently, it is necessary that the interrogatories be answered completely. The question arises then as to what exactly is considered to be a complete answer to an expert interrogatory; the very issue Cook seeks ruling upon.

In *Jefferson*, the United States District Court for the Northern District of Illinois explained that "[a]t a bare minimum, the answers must be both responsive to the interrogatory question and complete." *Id.* at 526. The Court further explained that "[a] party's failure to answer expert witness interrogatories in compliance with the provisions of Rule 26(b)(4) invokes the court's discretion in fashioning the appropriate response." *Id.* at 527. The answers furnished by the plaintiff, for example, in *Jefferson*, were found to be sparse and unresponsive.

Interrogatory # 10 asked for the "substance of the facts and opinions" about which the expert expected to testify and the identity of "each document that reflects or refers to such expected testimony, including each draft thereof." With reference to the excessive force claim, plaintiff's answer stated that "Robert di

Grazia in summary is expected to testify that the defendant used excessive force and improper and negligent tactics in the attempted arrest of the decedent." *Id.* at 524.

Plaintiff's skeletal answer to Interrogatory # 10 did not provide the degree of disclosure contemplated by the Rule concerning the "substance of the facts and opinions of the expert testimony." *Id.* at 527.

Courts in other jurisdictions have also elaborated on what is necessary to sufficiently answer an interrogatory directed at expert witnesses. On the most general level, an "answer to an interrogatory must be complete in itself and should not refer to pleadings, or to depositions, or other documents or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Ferrara v. Balisteri & DiMaio, Inc.,* 105 F.R.D. 147, 150 (D.Mass.1985). More specifically, the disclosure requirement of the Rule requires that when answering interrogatories directed at expert testimony one must precisely state the subject matter upon which the answer is based, explain the terms used in the answer, and disclose potential theories of the expert testimony. *Rupp v. Vock & Weiderhold Inc.,* 52 F.R.D. 111, 113 (N.D. Ohio E.D.1971); *Mann v. Newport Tankers Corp.,* 96 F.R.D. 31, 33 (S.D.N.Y.1982); *Hockley v. Zent Inc.,* 89 F.R.D. 26, 30 (M.D.Penn.1980).

By way of illustration, the United States District Court for the District of Massachusetts has given some specific examples of expert interrogatory answers being deficient. In *Williams v. McNamara,* the court found answers to the interrogatories as inadequate when they "did not inform the defendants of what the testimony of the expert will be at trial so that the defendants can gather evidence to rebut the expert's opinions." 118 F.R.D. 294 at 296 (D.Mass.1988). The court provided the following examples of when an answer containing the expert opinions was too general:

"Dr. Siegel will opine that the 'general training, education and supervision of the police officers was negligent and substandard.' This is singularly uninformative as to the substance of the opinions. *To be sufficient, the answers must give some indication as to particular respects in which the training, education and supervision were substandard.* Similarly, a sufficient statement of the substance of the· *opinion must inform the defendants in what respects the procedures* followed by the police on January 2, 1983 *were 'substandard.'* The answers must *identify* the 'published departmental rules' and recognized 'national standard' which were violated when the use of force was not properly reported ... *The plaintiffs must state the 'grounds' i.e., the basis, reason why,* Dr. Siegel opines that there exists a policy of the city of Boston to encourage and condone the use of excessive force, summary punishment and abuse of process against its citizens."

*Id.* (emphasis added).

More simply, the term "summary of the grounds for each opinion" speaks to the reasons or rationale behind the opinions and not to merely a recitation of documents or *general statement* of the expert's intended testimony. Additionally, the court viewed as essential that the "substance of the opinion be stated in a manner that would 'inform the interrogating party of the reasons or basis for the opinions. Otherwise the answers are in large measure useless ...' " *Id.*

In *Mann,* the United States District Court for the New York, Southern District, found supplemental answers to interrogatories directed at experts "deficient in material respects," when the answer did not contain a "summary of the grounds of each opinion." For example, one opinion answer stated "that the plaintiff was injured by a Mr. Harper, a wiper who struck plaintiff's little finger of his right hand while improperly swinging a mall or sledge." 99 F.R.D. at 33. The Court cogently inquired "where are the 'grounds for that opinion?' " In a further example of an insufficient answer the court described:

Further, what is Mr. Zorne's meaning that the repairs are inconsistent *"with*

*customary and safe shipboard practice," a meaningless term unless fully explained, and it must be explained if it is to be considered and is being seriously pressed.*

With these basic admonitions on the lack of sufficiency to answers to interrogatories directed at experts we perceive, in the instant case, a somewhat similar thread running through Uresil's answers.

II. *Uresil's Answers to the Expert Witness Interrogatories*

■ Case law, as above discussed, makes it clear that in order to sufficiently answer expert witness interrogatories one must provide, the theories which the experts will use when testifying, a precise statement of the subject matter upon which the answer is based, an explanation of the terms used by the expert, and the rationale or reasons behind the expert's answers. All of this information must be furnished keeping in mind the underlying purpose of interrogatories: to allow the opposing party to prepare a rebuttal or cross-examination of the testimony presented.

Based on this criteria we find that Uresil's answers to the interrogatories directed at its expert witnesses are insufficient. We find the answers furnished by Uresil are very general in nature containing broad, open-ended technical statements not unlike the examples earlier cited. We find that it is impossible for a reader of these answers to ascertain any of the specifics to which Uresil's experts will testify or from where Uresil's expert witnesses derived their conclusions. Essentially, Uresil's answers are evasive and repetitive and, most importantly, without explanation of the basis for any of the expert witnesses' theories. Additionally, we find that the answers do not adequately specify which products the expert witnesses' answers address.

The following will illustrate some examples of Uresil's deficient expert witness interrogatory answers and the areas where they need to be supplemented:

■ The answers for all of Uresil's experts state that each "is prepared to evaluate the Cook catheters in relation to the Uresil products that are involved in the instant case." First, we are left with no specifics in understanding the generality "to evaluate ... in relation to." Next, to be sufficient, Uresil must at least identify which of Cooks catheters will be evaluated, as well as the particular aspects of those catheters, that will be evaluated by Uresil's expert witnesses. Additionally, Uresil's answers are found deficient in their identification of which of Uresil's products will be evaluated in relation to Cook's catheters.

■ For experts Dr. Alverdy, Dr. Chamberlin, Dr. Michael Goldberg, Dr. McGrail, Dr. Shapiro, Dr. Carney, and Mr. Schwartz the interrogatory answers state that they "will testify to the uniqueness of the Uresil endoscopy balloons and the similarities of the Cook tamponade balloons." Here, Uresil totally fails to indicate what its experts mean by the term "uniqueness" in relation to the "endoscopy balloons" and exactly to which similarities of the Cook tamponade balloons they are referring.

■ Additionally, answers posed for Drs. Alverdy, Chamberlin, McGrail and Shapiro and Mr. Schwartz sets forth that each will "testify about the Uresil central venous hyperalimenation catheters ..." It is unclear what the phrase "testify about" means, thus essentially making this an inadequate answer having within it no statement of the grounds, basis, or reasons to form the necessary degree of disclosure contemplated by the rules. Uresil further fails to explain the open ended statement, in the context of a sufficient answer, what it referred to "as to the merits of Uresil research and development as they relate to these products and as they relate to the Uresil/Cook controversy." How Cook could discern the substance of the fact or opinions to which an expert is expected to testify, as contained in such an answer, is anybody's guess.

■ Finally, we find that Uresil has been no more specific when furnishing expert testimony relating to damage calculation. The answers from experts Carney, Rabiner, Schwartz and Shapiro need to present which markets, profits, and practices they are using and referring to when they state that they will testify,

"regarding the sales, marketing and profitability of the medical devices and regarding the potential sales and profitability of medical devices made by Uresil at the request of Cook ... as to the practices and costs in the medical field in connection with research and development, and as to the calculation of damages in this suit."

### III. *Conclusions*

We find that after multiple renditions by Uresil of its answer to the interrogatories directed at its expert witness, we are no closer to resolving the instant discovery dispute than when we initially addressed the problem with the idea of an amicable resolution of the matter. Accordingly, we wish not to travel this road any longer. It follows then, that by virtue of the above stated, it will be ORDERED that all of Cook's expert witnesses,[1] who will or may testify at trial, be made available to Uresil for deposition. The reasonable fees for time spent at such deposition by such designated expert witnesses will be equally shared by the parties.

### IV. *Misappropriation Claims*
### *Interrogatory Number 2*

■ In reviewing answers to those interrogatories posed by Cook relating to the claims of misappropriation, we likewise find the same lack of specificity in Uresil's answers as that above described. Viewing the information provided by Uresil in response to interrogatory number 2, it is clear that Uresil has not identified the components and/or concepts incorporated in the products Uresil claims Cook misappropriated. Nor does Uresil identify all information and documents alleged by Uresil to be confidential and to have been misappropriated by the defendant. It must so indicate whether there are or not such information or documents. We find Uresil's response to items (d) and (e) of Interrogatory No. 2 particularly inadequate.

### *Interrogatory Number 3*

■ In responding to interrogatory number 3, Uresil has failed to identify any of

Cook's agents who entered into an agreement or "acknowledged an agreement" limiting Cook's use of information obtained from Uresil. Additionally, any memorialization of the agreements was not identified by Uresil. These responses are needed to make the answers in the interrogatories sufficient under the rules.

### *Interrogatories Numbers 10 Through 13*

Cook's interrogatories numbers 10 through 13 essentially asks for the amount of actual damages Uresil claims to have incurred by virtue of the allegations contained in the complaint. Quite obviously, calculation of this liquidated amount will necessarily come from information which Cook itself will supply with respect to sales of the alleged offending products. There is no question that Uresil must eventually provide to Cook a liquidated sum representing the claimed actual damages. Additionally, the method by which Uresil calculated its alleged actual damages must also be forthcoming. Accordingly, a ruling as to the sufficiency of the answers by Uresil will be deferred until that time when all discovery has been completed. At that time Uresil will be required to submit to Cook specific information relating to the amount of money Uresil believes it is entitled to recover and the method and data used to arrive at the stated amount. Failure to so provide specific information as to the damages Uresil will claim of Cook may involve the imposition of sanctions aimed at the complaint filed in this case.

### *Order*

It is hereby ORDERED as follows:
1. Uresil will make available for deposition by Cook those witnesses it will call as expert witnesses at trial herein. These depositions will be scheduled and completed within 45 days from the date hereof.
2. Failure to make any expert witness above mentioned available for deposition within the 45 day period will result in a bar to that witnesses' participation at trial.

---

1. Except for Dr. Edward M. Goldberg who's

interrogatory appears marginally sufficient.

3. The reasonable costs for time spent at deposition of the expert witnesses will be shared equally by the parties.

4. Uresil will supplement its answers to interrogatories numbers 2 and 3 as described herein.

5. Uresil will be required to supplement its answers to interrogatories numbers 10 through 13 at the completion of discovery. Failure to adequately answer those interrogatories relating to damages may result in the imposition of sanctions aimed at the pleadings in this case.

6. A separate order will be issued reflecting the rulings made by this court concerning the discovery dispute presented to the court on November 30, 1990.

So ORDERED.