Wanda Eddy, appellant, v. Builders
Supply Company, Inc., appellee.
___ N.W.2d ___

Filed January 17, 2020.    No. S-18-800.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev.
   Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify,
   reverse, or set aside a Workers' Compensation Court decision only when
   (1) the compensation court acted without or in excess of its powers; (2)
   the judgment, order, or award was procured by fraud; (3) there is not
   sufficient competent evidence in the record to warrant the making of the
   order, judgment, or award; or (4) the findings of fact by the compensa-
   tion court do not support the order or award.
2. ____: ____. On appellate review, the factual findings made by the trial
   judge of the Workers' Compensation Court have the effect of a jury ver-
   dict and will not be disturbed unless clearly wrong.
3. **Workers' Compensation: Judgments: Appeal and Error.** In testing
   the sufficiency of the evidence to support the findings of fact in a work-
   ers' compensation case, an appellate court considers the evidence in the
   light most favorable to the successful party, every controverted fact must
   be resolved in favor of the successful party, and the appellate court gives
   the successful party the benefit of every inference reasonably deducible
   from the evidence.
4. **Workers' Compensation: Pretrial Procedure.** The Workers'
   Compensation Court's authority to enforce compliance with reasonable
   discovery is as broad as that of any trial court in Nebraska.
5. **Evidence: Appeal and Error.** Generally, the control of discovery is a
   matter for judicial discretion, and decisions regarding discovery will be
   upheld on appeal in the absence of an abuse of discretion.
6. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.

7. **Pretrial Procedure.** A party has a right to have interrogatories answered, and the duty to supplement answers previously given in response to an adversary's interrogatories is a continuing duty.

8. **Rules of the Supreme Court: Pretrial Procedure.** A party's failure to answer properly served interrogatories or to seasonably supplement discovery responses may be grounds for sanctions imposed under Neb. Ct. R. Disc. § 6-337.

9. \_\_\_\_: \_\_\_\_. To avoid sanctions under Neb. Ct. R. Disc. § 6-337, an interrogated party must either answer or object to the interrogatories or move for a protective order relieving the interrogated party from answering the interrogatories.

10. \_\_\_\_: \_\_\_\_. Sanctions under Neb. Ct. R. Disc. § 6-337 exist not only to punish those whose conduct warrants a sanction but to deter those, whether a litigant or counsel, who might be inclined or tempted to frustrate the discovery process by their ignorance, neglect, indifference, arrogance, or, much worse, sharp practice adversely affecting a fair determination of a litigant's rights or liabilities.

11. **Rules of the Supreme Court: Pretrial Procedure: Appeal and Error.** An appropriate sanction under Neb. Ct. R. Disc. § 6-337 is determined in the factual context of a particular case and is initially left to the discretion of the trial court, whose ruling on a request for sanction or a sanction imposed will be upheld in the absence of an abuse of discretion.

12. **Pretrial Procedure: Expert Witnesses.** In determining whether to exclude testimony of an expert witness called by a party who has failed to comply with a request for discovery, the trial court should consider the explanation, if any, for the party's failure to respond, or respond properly, to a request for discovery concerning an expert witness, importance of the expert witness' testimony, surprise to the party seeking preclusion of the expert's testimony, needed time to prepare to meet the testimony from the expert, and the possibility of a continuance.

13. **Rules of the Supreme Court: Pretrial Procedure.** Inasmuch as the Nebraska Court Rules of Discovery in Civil Cases are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules.

14. **Motions for Continuance: Time.** A continuance is ordinarily the proper method for dealing with a claim that there has been a failure to disclose in a timely manner.

15. **Motions for Continuance: Appeal and Error.** A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.

16. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.

17. **Workers' Compensation: Negligence: Evidence: Appeal and Error.** An appellate court gives considerable deference to a trial judge's determination of whether particular conduct amounted to willful negligence. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

18. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not passed upon by the trial court.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Joseph S. Risko and Nicholas W. O'Brien, Senior Certified Law Student, of Carlson & Burnett, L.L.P., for appellant.

Robert Kinney-Walker, of Law Office of James Nubel, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Wanda Eddy appeals from an adverse decision of the Nebraska Workers' Compensation Court. The court excluded the testimony of Eddy's expert witness as a discovery sanction, denied her motion to continue trial, and dismissed her petition after finding that she intentionally shot herself in the head with a nail gun. Eddy contends on appeal that the compensation court abused its discretion. For the reasons set forth below, we affirm.





## BACKGROUND

On September 24, 2015, a ¾-inch nail became fully imbedded in Eddy's right temple while she was at work for Builders Supply Company, Inc. (Builders Supply). Eddy claims that on the day of her injury, as part of her employment with Builders Supply, she connected her nail gun to an airhose and the gun misfired lodging a nail in her right temple. The nail fully submerged underneath her skin and partially penetrated her skull at nearly a right angle, tilted slightly upward. There were no eyewitnesses as to how the injury occurred.

In November 2015, Builders Supply issued a formal letter to Eddy denying her workers' compensation claim, stating that she had intentionally injured herself. In October 2016, Eddy filed a petition in workers' compensation court which alleged that she had sustained a "severe and permanent brain injury" as a result of an accident with the nail gun. Builders Supply filed an answer which alleged that Eddy's claim is barred, because she "deliberately shot herself in the head with the nail gun."

Trial in the matter was originally scheduled for June 2017, but was continued to November upon stipulation of the parties. In October, Eddy moved to continue the trial. Over Builders Supply's objection, the court granted Eddy's motion and rescheduled trial for February 2018. In January 2018, Eddy filed a motion for partial summary judgment. On February 2, Eddy filed a motion in limine which argued that Builders Supply had willfully destroyed evidence when it disposed of some of the nail guns used in its "'trim shop.'" The court granted Builders Supply's request to set a hearing on the motions to take place on the previously scheduled February trial date. The court denied Eddy's motions on March 16 and rescheduled trial for April 25. On the morning of trial, the court granted Eddy's motion to bifurcate trial over Builders Supply's objection. Trial proceeded on the issue of liability only. The primary issue for trial was whether Eddy intentionally injured herself or was injured in an accident.

Prior to the presentation of Eddy's case in chief, the court considered Builders Supply's motion to exclude the testimony of Eddy's expert witness, Ralph Barnett. Builders Supply argued that Eddy had not identified Barnett as an expert until 2 weeks before trial, did not specify that Barnett would provide live testimony rather than testimony through a report until 5 days prior to trial, and did not disclose Barnett's opinions or his reasons for his opinions. Builders Supply offered into evidence an interrogatory submitted to Eddy on October 18, 2016, requesting the identity of any expert witnesses to be called at trial, a summary of any expert opinion, and the basis for those opinions. In a letter to Builders Supply dated August 2, 2017, Eddy's counsel stated that it had retained Barnett as a consulting expert and requested that the nail gun be made available for testing. Counsel for Builders Supply responded with a letter asking for more information. Eddy did not respond to this letter or move to compel the production of the nail gun.

Eddy provided supplemental answers to discovery on April 11, 2018, which stated: "[Barnett will] offer expert opinions

regarding function of Paslode model T250-F16, 16-gauge finish nailer. Expert opinion documentation will be provided as soon as received by the responding party. See witness' CV attached." On April 20, Eddy provided supplemental discovery responses which stated that Barnett's opinions would be based upon his experience, training, and education in the field of mechanical engineering and based upon experiments and tests he conducted with a "Paslode model T250-F16, 16-gauge finish nailer." The supplemental responses stated that Barnett's expected testimony would include, but not be limited to, the mechanical function of the nail gun, the feasibility of misfiring upon connecting it to an air supply, and the penetrative force of a "3/4-inch brad nail" fired from the nail gun. With the supplemental responses, Eddy provided 174 pages of material relied upon by those in the field of mechanical engineering, which Barnett had reviewed in preparing his testimony.

Following argument, the court sustained the motion to exclude Barnett's testimony due to Eddy's failure to disclose the opinions he would offer. The court found that pursuant to *Norquay v. Union Pacific Railroad*,[1] Eddy had not complied with the rules of discovery.

Eddy moved to continue trial to give Builders Supply an opportunity to depose Barnett. The court denied the motion. The court found that Eddy retained Barnett in the summer of 2017; that at the time of trial, no opinion of Barnett's had been disclosed; that Eddy had already been granted one continuance; and that the court had cleared 2 days for trial and the witnesses were present and ready to testify.

The court heard testimony from Barnett as an offer of proof. Barnett is a professor of mechanical and aerospace engineering at a university in Chicago, Illinois, and has been practicing as a mechanical engineer since 1969. He is the owner and head

---

[1] *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

engineer of a mechanical engineering firm which specializes in the safety of mechanical devices. Barnett was engaged to analyze two mechanical issues with respect to the nail gun used by Eddy. First, whether it was feasible for a nail gun to discharge a nail when plugged into an air source. Second, whether the location of the nail in Eddy's head showed that she did not intentionally shoot herself in the head with a nail gun. An x ray in evidence, reproduced above as exhibit 142, shows that the nail fully penetrated the outside of Eddy's head and partially entered her skull. To evaluate these issues, Barnett conducted tests using an exemplar nail gun with the same make and model number as used by Eddy. He also reviewed a user's manual and contacted the manufacturer.

As to the first issue, Barnett opined that based on his knowledge of the nail gun industry, it is possible for a nail gun to fire a single nail when connected to an air source, even without engaging the barrel and trigger safeties on the device, if the device has aged and its parts have worn. As to the second issue, Barnett tested the penetrative force of the nail gun by firing it with the barrel pressed up against various items such as a coconut and hardwoods. The nails countersunk through these objects, meaning the heads of the nails traveled completely through the materials. Based on these tests, and his education and experience, Barnett opined that Eddy's injury could only have been caused by a "missile" nail, discharged from a distance, because the nail had only partially penetrated her skull. Barnett stated that had the nail gun been pressed against her head when fired, the nail would have fully penetrated the skull and entered her brain.

During trial, the court heard testimony from numerous witnesses, including Eddy and her husband, who also worked for Builders Supply. Eddy denied that she had attempted suicide and claimed that the gun had misfired. She testified that nails had accidentally been fired in the past, which her husband confirmed during his testimony, as did other coworkers who testified.

Evidence was offered that Eddy was under stress from family issues, including being physically and verbally abused by her adult children, who were incarcerated at the time of trial, and caring for her grandchildren. Eddy stated that she kept a loaded handgun in her home at the time of her injury and that she could have used the handgun had she wanted to kill herself. Records from medical professionals who treated Eddy after the incident stated that Eddy was not at risk of suicidal behavior.

A poem written by Eddy on a Builders Supply envelope was found at her work desk following her injury. Eddy testified she wrote the poem on September 17, 2015. The poem as printed on the envelope read:

It's To late
Now The clock has
Spun my hours have passed
My time is Done
The word I Leave with
are in my heart
You've always knewn Them
Right From The start
I use to hold you in
my arms Now I only
hold you in my heart
But my time is up
Now it's time to
Part Just Know I
take you with me
all The love within
my Heart

Eddy posted the poem on her social media account along with a picture of her father and of her mother-in-law, who had both passed away. Eddy then made another post for her mother, also deceased, who was not included in the first post by mistake. Eddy denied that the poem was a suicide note and stated that the poem was meant to provide "closure" regarding

her mother's death. She stated that she was inspired to write the poem because she was working at a saw table in the shop, which is the same location where she learned of the passing of each family member.

Employees of Builders Supply testified that the nail gun worked properly on the day Eddy was injured. They testified that the nail gun has both a barrel safety and a trigger safety, that both safeties must be activated in order for the nail gun to fire, and that therefore a nail gun would not fire when plugged into an airhose. They videotaped tests using the nail gun to show that even if the gun were rigged to fire from a distance, the nail would not countersink beneath skin and penetrate bone.

Eddy's supervisor testified that on the morning of her injury, Eddy came to him and stated that she had to leave work to pick up her grandchild at the hospital. She did not mention that she had been injured. The warehouse manager testified that at times Eddy appeared "emotionally distraught" at work.

In its posttrial order, the compensation court found that the preponderance of the evidence demonstrated that Eddy intentionally shot herself in the head with the nail gun. Based on its review of the testimony and exhibits, the court accepted Builders Supply's position that the nail gun can fire a nail only when the barrel and trigger safeties are engaged and that the nail would not have countersunk into Eddy's head if her injury happened in the way she described.

The court pointed to inconsistencies in Eddy's accounts of the incident. At trial, Eddy testified that the nail gun accidentally misfired when she attached the gun to the airhose. But in a video recorded while Eddy was in the hospital following her injury, she stated that she dropped the nail gun and then it misfired. The court also cited to two statements that Eddy made to medical professionals which indicated that the nail gun was pointed at her head, a fact which Eddy declined to admit while testifying from the witness stand. The court found that the preponderance of the evidence showed that the nail gun was

pressed up against Eddy's head and fired when the two safeties were engaged. The court further concluded that Eddy had acted intentionally and with willful negligence and that her injury was not covered under the Nebraska Workers' Compensation Act. Eddy appealed. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this State.[2]

## ASSIGNMENTS OF ERROR

Eddy assigns that the workers' compensation court (1) abused its discretion when it sustained Builders Supply's motion to exclude the testimony of Barnett, (2) abused its discretion in denying her motion to continue, (3) erred in entering an order of dismissal without sufficient evidence regarding the mechanical function of the nail gun, and (4) erred in determining that she willfully attempted suicide without considering psychological evaluations and medical opinions showing that she was not suicidal.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[3]

[2,3] On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[4] In testing the sufficiency of the evidence to support

---

[2] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2018).

[3] *St. John v. Gering Public Schools*, 302 Neb. 269, 923 N.W.2d 68 (2019).

[4] *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018).

the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.[5]

## ANALYSIS

In her first two assignments of error, Eddy argues that the compensation court acted without or in excess of its powers when it excluded the testimony of her expert witness and denied her motion for a continuance to allow Builders Supply to depose her expert. In her final two assignments of error, Eddy argues that the compensation court's determination that she acted with willful negligence at the time of her injury is not supported by sufficient evidence. Upon review of the arguments Eddy has asserted on appeal, we conclude that her assignments of error are without merit. The compensation court acted within its authority and rendered a decision based on sufficient evidence.

### Rules of Discovery

Eddy contends that the district court abused its discretion in excluding her expert's testimony, because she provided information regarding her expert as soon as it became available and because her expert's testimony was critical to her claim that her injury was caused by a mechanical malfunction. Builders Supply argues in response that Eddy knew that her expert was an important witness months before trial; that there is no excuse for Eddy's late designation of her expert as a testifying witness; and that at the time of trial, she had not disclosed any of her expert's opinions or the reasons for those opinions.

[4-6] Discovery in the Workers' Compensation Court is governed by the Nebraska Court Rules of Discovery in Civil

---

[5] *Id.*

Cases, Neb. Ct. R. Disc. §§ 6-301 to 6-337 (rev. 2016).[6] A workers' compensation court's authority to enforce compliance with reasonable discovery is as broad as that of any trial court in Nebraska.[7] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[8] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[9]

The primary purpose of the discovery process is to explore all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute.[10] The discovery process also provides an opportunity for pretrial preparation so that a litigant may conduct an informed cross-examination.[11] Moreover, pretrial discovery enables litigants to prepare for a trial without the element of an opponent's tactical surprise, a circumstance which might lead to a result based more on counsel's legal maneuvering than on the merits of the case.[12]

The liberal discovery of potential testimony of an expert witness is not merely for convenience of the court and litigants, but exists to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact.[13] Section 6-326(b)(4)(A)(i) provides:

---

[6] See Workers' Comp. Ct. R. of Proc. 4 (2009).

[7] *Hofferber v. Hastings Utilities*, 282 Neb. 215, 803 N.W.2d 1 (2011). See Neb. Rev. Stat. § 48-162(1) (Reissue 2010).

[8] *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017).

[9] *Id.*

[10] *Paulk v. Central Lab. Assocs.*, 262 Neb. 838, 636 N.W.2d 170 (2001).

[11] *Id.*

[12] *Id.*

[13] See *Norquay, supra* note 1.

A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

[7] Under § 6-326(e)(1)(B), a party is under a duty seasonably to supplement a response to a request for discovery directed toward the identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony. A party has a right to have interrogatories answered, and the duty to supplement answers previously given in response to an adversary's interrogatories is a continuing duty.[14]

[8,9] A party's failure to answer properly served interrogatories or to seasonably supplement discovery responses may be grounds for sanctions imposed under § 6-337.[15] The court "may make such orders in regard to the failure as are just"[16] or may enter "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him or her from introducing designated matters in evidence."[17] For preclusion of testimony as a sanction for noncompliance with a duty to answer interrogatories under § 6-326(b)(4)(A)(i) or a duty to provide supplemental responses under § 6-326(e)(1)(B), § 6-337 does not require noncompliance with a prior order for discovery.[18] To avoid sanctions under § 6-337, an interrogated party must either answer or object to the interrogatories or

---

[14] See, *Larkin v. Ethicon, Inc.*, 251 Neb. 169, 556 N.W.2d 44 (1996); *Norquay, supra* note 1.

[15] See *Paulk, supra* note 10.

[16] § 6-337(b)(2).

[17] § 6-337(b)(2)(B).

[18] See *Norquay, supra* note 1.

move for a protective order relieving the interrogated party from answering the interrogatories.[19]

[10,11] Sanctions under § 6-337 exist not only to punish those whose conduct warrants a sanction but to deter those, whether a litigant or counsel, who might be inclined or tempted to frustrate the discovery process by their ignorance, neglect, indifference, arrogance, or, much worse, sharp practice adversely affecting a fair determination of a litigant's rights or liabilities.[20] An appropriate sanction under § 6-337 is determined in the factual context of a particular case and is initially left to the discretion of the trial court, whose ruling on a request for sanction or a sanction imposed will be upheld in the absence of an abuse of discretion.[21]

[12] As we held in *Norquay*, in determining whether to exclude testimony of an expert witness called by a party who has failed to comply with a request for discovery, the trial court should consider the explanation, if any, for the party's failure to respond, or respond properly, to a request for discovery concerning an expert witness, importance of the expert witness' testimony, surprise to the party seeking preclusion of the expert's testimony, needed time to prepare to meet the testimony from the expert, and the possibility of a continuance.

Regarding Eddy's explanation for failing to comply with discovery, she argues that she supplemented her discovery responses with information about Barnett's testimony as soon as it became available.

Builders Supply argues that "[w]hether through neglect or litigation strategy, there was no valid reason to wait until a couple of weeks before trial to obtain an expert witness."[22] Builders Supply concedes that Eddy provided information regarding her expert as soon as the information became known

---

[19] *Id.*

[20] *Id.*

[21] *Id*. See *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999).

[22] Brief for appellee at 10.

to her. It argues that the issue is not Eddy's failure to supplement her discovery responses, but, rather, the issue is Eddy's fundamental failure to disclose any expert opinions prior to trial. We agree with Builders Supply.

The compensation court stated in its posttrial order that it excluded Barnett as a witness because

> he was disclosed in too close proximity to the trial date and because his opinions and the basis for his opinions (whatever they were) were never disclosed to [Builders Supply] prior to trial. . . . While [Eddy] disclosed the topics upon which [Barnett] would testify, his opinions were never disclosed. . . . With the accident having happened on September 24, 2015, there was no reason [Eddy] could not have retained [Barnett] and obtained his opinions long before the last week to ten days before trial.

(Citations omitted.)

[13] Inasmuch as the Nebraska Court Rules of Discovery in Civil Cases are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules.[23] "Fed.R.Civ.P. 26(b)(4)(A)(i) requires an expert witness to answer interrogatories and reveal the substance of the facts underlying his or her opinion in order to allow the opposing party to prepare an effective cross-examination."[24] In *Uresil Corp. v. Cook Group, Inc.*, the court found that under "Fed.R.Civ.P. 26(b)(4)(A)(i) . . . when answering interrogatories directed at expert testimony one must precisely state the subject matter upon which the answer is based, explain the terms used in the answer, and disclose potential theories of the expert testimony."[25] *In Williams v. McNamara*, the court found answers to the interrogatories as inadequate

---

[23] See *Gernstein v. Lake*, 259 Neb. 479, 610 N.W.2d 714 (2000).

[24] *Day v. NLO, Inc.*, 147 F.R.D. 144, 146 (S.D. Ohio 1993).

[25] *Uresil Corp. v. Cook Group, Inc.*, 135 F.R.D. 168, 171-72 (N.D. Ill. 1991).

when they did not "inform the defendants of what the testimony of the expert will be at trial so that the defendants can gather evidence to rebut the expert's opinions."[26] The *Williams* court viewed as essential that the "'substance of the opinions'" be stated in a manner that would "inform the interrogating party of the reasons or bases for the opinions. Otherwise, the answers are in large measure useless . . . ."[27]

The record shows that in October 2016, Builders Supply submitted to Eddy an interrogatory fashioned from § 6-326(b)(4)(A)(i) which requested information regarding potential expert testimony. Eddy retained Barnett as a consultant in the summer of 2017. Eddy did not disclose that she intended for Barnett to testify as an expert witness until 2 weeks before trial in April 2018. Even then, Eddy never disclosed Barnett's opinions or his reasons for those opinions. In her first supplemental discovery answers provided on April 11, 2018, Eddy stated that Barnett would offer expert opinions regarding the function of the "Paslode model T250-F16, 16-gauge finisher nailer." In her second supplemental answers provided on April 20, Eddy stated that Barnett would offer expert opinions regarding the function of that model of nail gun; the feasibility of misfiring upon connecting that model of nail gun to an air supply; and the penetrative force of a "3/4-inch brad nail" fired from that model of nail gun. Nothing within either set of supplemental answers would have informed Builders Supply of what opinions Barnett would offer at trial or the reasons or rationale behind those opinions so that Builders Supply could gather evidence to rebut those opinions. Neither did Eddy object or move for a protective order to relieve herself from her disclosure obligations. We find nothing in the record that would excuse Eddy from making these disclosures if she wished to utilize Barnett's testimony.

---

[26] *Williams v. McNamara*, 118 F.R.D. 294, 296 (D. Mass. 1988).

[27] *Id.*

Eddy also argues that Barnett's testimony was integral to her claim that the nail gun malfunctioned. Given that the compensation court's posttrial findings placed significant emphasis on the mechanical function of the nail gun, we agree with Eddy that Barnett's testimony went to a critical issue in this case. At the same time, we observe that the arguments Eddy makes on appeal regarding the necessity of Barnett's testimony are somewhat different than the arguments she made to the compensation court when it was considering the motion to exclude. Eddy argued that Barnett was essential to provide rebuttal testimony to Builders Supply's expert on the functionality of the nail gun. The compensation court rejected this argument, stating that Eddy knew of Builders Supply's expert for several months prior to disclosing Barnett as a testifying expert. More importantly though, the court did not permit Builders Supply to call its expert witness because the parties had failed to stipulate that the expert could testify telephonically. Therefore, both sides presented their opposing theories regarding the functionality of the nail gun through testimony from multiple lay witnesses. Although Barnett was an important witness, there was no expert testimony for Eddy to rebut and she was not prevented from presenting witnesses who supported her theory that the nail gun misfired.

Lastly, Eddy argues that Builders Supply was not unduly surprised and had adequate time to prepare for Barnett's testimony. We disagree. The first time Builders Supply learned of Barnett's opinions was during his offer of proof on the morning of the first day of trial. Allowing Barnett to offer undisclosed expert testimony would have forced Builders Supply to conduct an uninformed cross-examination of an important witness. Builders Supply would have been unfairly surprised by the bases for Barnett's opinions, because Eddy did not provide a full description of the tests Barnett had conducted or explain why his tests led him to form his opinions. Litigants

are required to disclose a description of tests that support an expert's opinion.[28]

The issue of whether it is appropriate for a court to exclude a witness as a discovery sanction depends on the factual context of each case. In the context of Eddy's delays of trial in this case, we agree with Builders Supply's argument that the substance of Barnett's testimony supports the compensation court's decision to exclude Barnett, because it demonstrates Eddy's lack of excuse for nondisclosure. Eddy knew Builders Supply's position since she received the denial letter in November 2015. Neither side changed its theory of the case since the initial pleadings were filed in October 2016. The sole factual dispute in the case was whether Eddy's injury was intentional or accidental. Yet, the record indicates that Eddy herself did not know what Barnett's testimony would be until the week prior to trial.

The court's decision to exclude the testimony of Barnett ensured that Builders Supply had a fair determination of its rights. Eddy's contention that the compensation court abused its discretion in excluding the testimony of Barnett as a sanction under § 6-337 is without merit.

## MOTION TO CONTINUE

[14,15] Eddy next contends that the compensation court abused its discretion in denying her motion to continue trial. Continuances are governed by the Workers' Comp. Ct. R. of Proc. 8 (2011), which states in part that "[a] continuance may be granted at the discretion of the trial judge if good cause is shown." A continuance is ordinarily the proper method for dealing with a claim that there has been a failure to disclose in a timely manner.[29] A motion for continuance is addressed to the discretion of the trial court, whose ruling

---

[28] See, *Norquay, supra* note 1; John P. Lenich, Nebraska Civil Procedure § 22:2 (2019).

[29] *Johnson v. Ford New Holland*, 254 Neb. 182, 575 N.W.2d 392 (1998).

will not be disturbed on appeal in the absence of an abuse of discretion.[30]

Eddy contends that there was good cause for a continuance due to the importance of Barnett's testimony and the need to allow Builders Supply to depose Barnett, an expense which Eddy offered to cover.

In considering whether Eddy's stated reasons for a continuance satisfy the good cause standard under rule 8 of the Workers' Compensation Court rules of procedure, we consider Eddy's motion in the context of the procedural history of the instant case. Eddy filed her petition on October 3, 2016. In March 2017, the court set the initial trial date for June 27. In May, the parties stipulated to continue trial in a joint filing. In June, the court set a trial date of November 14. On October 24, Eddy moved for a continuance. The court granted the motion over Builders Supply's objection and scheduled trial for February 8 and 9, 2018. Eddy filed a motion for partial summary judgment a month before trial was to begin in February and filed a motion in limine on February 2, a week before the scheduled trial. The court granted Builders Supply's request for a continuance and rescheduled the trial for April 25 and 26. Eddy then moved for a second continuance on April 25. The compensation court entered its order of dismissal on July 18. Another continuance would have reopened discovery and required the court to schedule another 2 days for trial, which would have delayed resolution of the case further. This timeline indicates that Eddy did not show good cause to continue trial, and the compensation court did not act unreasonably when it declined to again continue trial and permit the further delay of resolution of this case.

Eddy further contends that good cause for a continuance existed because Barnett's opinion became available only shortly before trial. Eddy alleges that not until March 2018

---

[30] *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992).

did she become aware that an expert witness would be necessary to rebut Builders Supply's argument that Eddy caused her own injury.

However, Builders Supply denied Eddy's claim in November 2015 for the reason that Eddy caused her own injury. In October 2016, Builders Supply filed an answer again alleging Eddy caused her own injury. Also in October 2016, Builders Supply sought discovery to identify whether Eddy intended to call an expert and, if so, what the expert's opinion would be. In August 2017, Eddy notified Builders Supply that Barnett had been retained as a consulting expert and discussed the need to examine the nail gun. Not until April 11, 2018, did Eddy supplement her discovery to identify that Barnett would be called to offer expert opinions regarding the function of the nail gun. And on April 20, Eddy supplemented her discovery yet again to indicate that Barnett would be called to testify live at trial on April 25.

The record shows that Eddy's untimely disclosures were not caused by a lack of awareness that an expert was needed to rebut Builders Supply's allegation that Eddy caused her own injury as that allegation was clear as early as November 2015 and continued to be clear throughout the pendency of this matter. Any prejudice that may have been cured through a continuance does not excuse Eddy's lack of diligence and does not overcome the unfairness to Builders Supply in delaying its trial and forcing it to continue to prepare its defense by deposing an undisclosed expert. As a result, Eddy did not show good cause to continue trial, and the compensation court did not abuse its discretion in declining to grant Eddy a second continuance.

## SUFFICIENT EVIDENCE OF
## WILLFUL NEGLIGENCE

Neb. Rev. Stat. § 48-101 (Reissue 2010) provides that when personal injury is caused to an employee by accident, arising out of and in the course of his or her employment, such

employee shall receive compensation from the employer if the employee was not willfully negligent at the time of receiving such injury. Under Neb. Rev. Stat. § 48-107 (Reissue 2010), the employer bears the burden to prove the employee's willful negligence. An employee's mere negligence is not sufficient to constitute willful negligence.[31] As relevant here, Neb. Rev. Stat. § 48-151(7) (Reissue 2010) defines the term "willfully negligent" as a deliberate act or as conduct evidencing a reckless indifference to safety. Absent extraordinary circumstances, suicide constitutes willful negligence under § 48-151.[32]

[16,17] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.[33] An appellate court gives considerable deference to a trial judge's determination of whether particular conduct amounted to willful negligence. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court.[34]

Eddy contends that the compensation court erred in finding that she acted with willful negligence. Eddy first argues that the court lacked sufficient evidence regarding the mechanical function of the nail gun. As mentioned above, the court heard evidence from Eddy, her husband, and Eddy's coworkers, who testified that the nail gun could have misfired. The court also heard evidence from Builders Supply employees such as Eddy's supervisor and the warehouse manager, who testified

---

[31] See *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

[32] *Breckenridge v. Midlands Roofing Co.*, 222 Neb. 452, 384 N.W.2d 298 (1986). See *Michael B. v. Northfield Retirement Communities*, 24 Neb. App. 504, 891 N.W.2d 698 (2017).

[33] *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996); *Hernandez v. Hawkins Constr. Co.*, 240 Neb. 129, 480 N.W.2d 424 (1992).

[34] *Estate of Coe v. Willmes Trucking*, 268 Neb. 880, 689 N.W.2d 318 (2004); *Guico, supra* note 31; *Spaulding v. Alliant Foodservice*, 13 Neb. App. 99, 689 N.W.2d 593 (2004).

that the nail gun would not have fired unless both safeties were engaged. The court drew upon evidence in the record to resolve this factual dispute. The court considered the physical evidence and determined that the nail could only have become embedded in Eddy's right temple at nearly a right angle if the gun was pointed at Eddy's head. The court also handled the gun and simulated Eddy's version of events by holding the nail gun near the head in one hand while plugging the nail gun into an imaginary airhose with the other hand. The court determined that it was "physically uncomfortable" to hold the nail gun in this position and found that it was unlikely that the accident happened in the manner Eddy described.

The court also made clear that it did not find Eddy's testimony credible. For example, the court noted that Eddy's behavior after the injury was not consistent with an accident— she left work early shortly after the incident, but instead of informing her supervisor that she had sustained an injury, she falsely told him that she had to pick up her grandchild from the hospital. The court also noted the inconsistencies in Eddy's account of the incident and identified Eddy's conflicting explanations of how the injury occurred.

The compensation court is the sole judge of the credibility of the witnesses and the weight to be given to testimony. Upon review of the court's decision on this issue, we find that the record contains evidence to substantiate the factual conclusions reached by the compensation court.

[18] Eddy also contends that the court erred because it entered its findings absent expert testimony. However, Eddy has not provided any authority stating that a finding of willful negligence under § 48-101 requires expert testimony, and Eddy has not shown that she argued to the compensation court that it could not render its decision absent expert testimony. An appellate court will not consider an issue on appeal that was not passed upon by the trial court.[35]

---

[35] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

Eddy further argues that the compensation court failed to consider medical evidence that she was not suicidal. Eddy contends that the compensation court erred by stating in its posttrial order that "there are no psychiatric treatment records in evidence." We agree with Builders Supply that when properly understood in the context of the record, the court's statement referred to the fact that there were no relevant psychiatrist records regarding Eddy's mental health prior to the time of her injury.

Eddy offered into evidence records from medical professionals regarding evaluations she received after her injury. A neurologist who began treating Eddy in March 2016 found no evidence that she exhibited "pathologically impulsive behavior," and he opined that the nail gun incident was not an intentional act to injure herself. A mental health therapist who evaluated Eddy on January 28, 2016, assessed her as a low suicide risk, as did a psychologist who evaluated Eddy on October 31, 2017. Further, the records indicate that as a result of the nail gun incident, Eddy experienced a traumatic brain injury, change in personality, and reduction in functionality, and that she suffers from anxiety and depression, but is not suicidal. These records were made after the September 2015 incident and were generated as a result of Eddy's medical treatment for her brain injury.

We find Eddy's argument to be without merit. First, the record indicates that the compensation court did consider Eddy's postinjury medical records. The court's order stated that it "reviewed each exhibit offered and received into evidence." Second, the applicable standard of review requires that we view the evidence in the light most favorable to the successful party and give the successful party the benefit of every inference reasonably deducible from the evidence.[36] That being the case, the evidence concerning Eddy's state of mind after her

---

[36] See *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007).

brain injury is not entitled to significant weight, because the evidence is likely more informative about the effects of Eddy's brain injury rather than indicative of Eddy's state of mind at the time of her injury.

Last, Eddy argues that Nebraska has a presumption against suicide, which the court did not significantly consider in its analysis. In Nebraska, there is a general rule that where a cause of death is in issue and there is nothing to show how death was caused, there is a negative presumption against suicide.[37] The presumption against suicide is one of law, not of fact, and is based upon the natural characteristics of persons for love of life and fear of death.[38] Because no cause of death is at issue in this case, the presumption against suicide is not applicable here. Even assuming, for the sake of argument, that the presumption against death by suicide could be extended to a presumption against an injury resulting from an attempted suicide, such a presumption could be overcome and rebutted by the introduction of evidence tending to show how the injury occurred.[39] Our discussion of the record shows that Builders Supply adduced extensive evidence showing how the circumstances of Eddy's injury were consistent with an intentional act, including the nature of the injury, the note penned by Eddy, her behavior, and her personal life.

In addition, there is authority contrary to Eddy's point which states that absent extraordinary circumstances, suicide constitutes willful negligence under § 48-151.[40] Nebraska law has recognized an exception to the rule that suicide constitutes willful negligence when the evidence shows that suicide was nonvoluntary.[41] Eddy has argued that her injury was the result of an accident and not due to injuring herself out of a lack of

---

[37] *Michael B., supra* note 32.

[38] *Id.*

[39] See *Breckenridge, supra* note 32.

[40] *Id.*

[41] *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983).

free will. There is sufficient evidence in the record to support the compensation court's decision under our deferential standard of review.

## CONCLUSION

The compensation court did not abuse its discretion in excluding the testimony of Eddy's expert witness as a discovery sanction. The compensation court did not abuse its discretion in declining to grant Eddy a second continuance. The compensation court did not err in concluding that Eddy had been willfully negligent.

Affirmed.